ANNIE REPPOND v. NATIONAL LIFE INSURANCE COMPANY OF AMERICA.

No. 1686.   Decided April 24, 1907.

**1.—Insurance—Failure to Pay Premium.**

A policy of insurance is not avoided under a stipulation therein that failure to pay a premium or any part thereof or note given therefor should cancel it, where the agent, assured being unable to make the first payment, took cash for so much of same as was payable to the company, and notes to himself for so much of the premium as was coming to him, though he afterwards turned over to the company such notes, and kept the cash himself, and the assured refused to pay the notes. (Pp. 522, 523.)

**2.—Insurance—Warranty—Statements as to Medical Treatment.**

A contract of insurance made the application of insured a part of the policy; and the application "warranted" that the statements therein and those made to the medical examiner were "full, complete and true, and without suppression of any fact or circumstance which would tend to influence the company in issuing a policy under this application." In answer to a question calling for the name and address of each physician who prescribed for him within five years, insured omitted one who had thus prescribed. Held, that the use of the word "warranty" did not necessarily create a warranty in law, unless it appeared that the parties mutually intended that the policy should not be binding if the statement were not literally true; that the language, "without suppressing any fact, etc.," qualified the answers given to the medical examiner as well as other statements in the application; that the contract as a whole was not to be construed as a warranty of the literal truth of every statement, but a representation that the applicant had not intentionally suppressed any fact material to the risk; and that the omission of the name of such physician did not, as matter of law, necessarily render the policy void, such effect depending on the good faith of the answer and its materiality. (Pp. 523–525.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Navarro County.

Mrs. Reppond sued the insurance company and obtained judgment. On appeal by defendant it was reversed, and rendered in its favor, and thereupon she obtained writ of error.

*W. J. Weaver, McClellan & Prince, Callicutt & Call* and *H. L. Stone,* for plaintiff in error.—The insured only warranted his statements and agreements, made in part one and part two of his application, to be true to the extent and in the sense that they were without suppression of any fact or circumstance that would tend to influence the company in issuing the policy. Phoenix Assur. Co. v. Munger Mfg. Co., 92 Texas, 297; McClain v. Provident L. Ins. Co., 49 C. C. App., 31, 110 Fed.,

Rep., 80; Moulor v. American Life Ins. Co., 111 U. S., 447; Aetna Life Ins. Co. v. France, 94 U. S., 561; Dilleber v. Home Life Ins. Co., 69 N. Y., 256; Provident Sav. L. Assur. Soc. v. Pruett (Ala.), 37 So. Rep., 700; Federal L. Assn. v. Smith, 86 Ill. App., 427; First Nat. Bank of Kansas v. Hartford F. Ins. Co., 95 U. S., 673.

The Court of Civil Appeals erred in holding that the policy became forfeited for the nonpayment of the notes given by Reppond to Adams. Thies v. Mutual L. Ins. Co., 13 Texas Civ. App., 280; Pythian L. Ins. Co. v. Preston, 47 Neb., 390; Union L. Ins. Co. v. Parker, 62 L. R. A., 390.

*Locke & Locke,* for defendant in error.—The provisions of the policy, and of parts one and two of the application, are sufficient to constitute the answers made by Reppond to the medical examiner, and contained in part two, warranties in law. Fitzmaurice v. Mutual Life Ins. Co., 84 Texas, 61; Kansas Mut. Life Ins. Co. v. Pinson, 94 Texas, 553; Ash v. Fidelity Mut. Life Assn., 63 S. W. Rep., 944; Aloe v. Mutual Res. Fund Life Assn., 147 Mo., 561; Weil v. New York Life Ins. Co., 47 La. Ann., 1405; Foot v. Aetna Life Ins. Co., 61 N. Y., 571; Provident Sav. Life Assur. Soc. v. Reutlinger, 58 Ark., 528; Provident Sav. Life Assur. Soc. v. Llewellyn, 7 C. C. A., 579, 58 Fed. Rep., 942; Bennett v. Anderson, 1 Irish Jur., 245, 3 Bigelow, 342; Cazenove v. British Equitable Ins. Co., 5 Jur. N. S., 1309, 3 Bigelow, 202.

It is essential to the validity of the policy that all warranted statements of fact be correct. No question of materiality, or of good faith, or of approximate truthfulness, arises. 1 May on Insurance, sec. 156; Kansas Mut. Life Ins. Co. v. Pinson, 94 Texas, 553; Fitzmaurice v. Mutual Life Ins. Co., 84 Texas, 61; Hutchison v. Hartford Life and Ann. Ins. Co., 39 S. W. Rep., 325, writ of error refused, 93 Texas, 687; Flippen v. State Life Ins. Co., 70 S. W. Rep., 787, writ of error refused; Brock v. United Moderns, 81 S. W. Rep., 340; Anderson v. Fitzgerald, 4 H. of L. Cases, 484; De Hahn v. Hartley, 1 Term Rep., 343; Jeffries v. Economical Mut. Life Ins. Co., 22 Wall., 47; Cobb v. Covenant Mut. Ben. Assn., 153 Mass., 176; Dwight v. Germania Life Ins. Co., 103 N. Y., 341; Metropolitan Life Ins. Co. v. Rutherford, 98 Va. 195; Johnson v. Maine & N. B. Ins. Co., 83 Me., 182.

In the following cases the general doctrine that a breach of warranty nullifies the contract of insurance was applied to untrue statements concerning previous employment of physicians, without regard to the seriousness of the ailment which gave occasion to such employment. Fidelity Mut. Life Assn. v. Harris, 94 Texas, 25; Ash v. Fidelity Mut. Life Assn., 63 S. W. Rep., 994, writ of error refused, 95 Texas, 673; Flippen v. State Life Ins. Co., 70 S. W. Rep., 787, writ of error refused; Brock v. United Moderns, 81 S. W. Rep., 340; Security Mut. L. Ins. Co. v. Calvert, 87 S. W. Rep., 889; Cobb v. Covenant Mut. Ben. Assn., 153 Mass., 176; Metropolitan Life Ins. Co. v. McTague, 49 N. J. Law, 587; Flynn v. Equitable Life Assur. Soc., 67 N. Y., 500; Provident Sav. Life Assur. Soc. v. Reutlinger, 58 Ark., 528; Aloe v. Mutual Res. Fund Life Assn., 147 Mo., 561; Fidelity Mut. Life Assn. v. McDaniel, 25 Ind. App., 608; Caruthers v. Kansas Mut. Life Ins. Co., 108 Fed. Rep., 487; McDermott v. Modern Woodmen of America, 71 S. W. Rep., 833; Mod-

ern Woodmen of America v. Van Wald, 6 Kans. App., 231; United Brethren Mut. Aid Soc. v. O'Hara, 120 Pa. St., 256; Lutz v. Metropolitan Life Ins. Co., 186 Pa. St., 527; Dwyer v. Mutual Life Ins. Co., 72 N. H., 572.

Under the terms of the policies and premium receipts, aside from the question of waiver, the insurance ceased immediately upon the nonpayment of either premium note at its maturity, without necessity of affirmative action of any kind upon the part of the company. Iowa Life Ins. Co. v. Lewis, 187 U. S., 335; Loughlin v. Fidelity Mut. Life Assn., 28 S. W. Rep., 411, writ of error refused, 93 Texas, 733; Pitt v. Berkshire Life Ins. Co., 100 Mass., 500; McIntyre v. Michigan State Ins. Co., 52 Mich., 188; Fowler v. Metropolitan Life Ins. Co., 116 N. Y., 389; Ressler v. Fidelity Mut. Life Ins. Co., 75 S. W. Rep., 735.

BROWN, ASSOCIATE JUSTICE.—Annie Reppond sued the insurance company upon a policy issued upon the life of her husband, John T. Reppond, dated the 10th day of July, 1902, by which the company promised to pay $5,000 to Annie Reppond within sixty days after receipt of notice and proof of the death of the assured. The policy contained a stipulation that a failure to pay a premium, or any part thereof, or any note given for a premium, or any part thereof, should cancel the policy.

The application was made by John T. Reppond through T. P. Adams, the agent of the insurance company, and the application contained this stipulation: "The statements and agreements made by me in this application, as well as those I have made, or shall make, to the company's medical examiner, are hereby warranted by me to be full, complete and true, and without suppression of any fact or circumstance which would tend to influence the company in issuing a policy under this application, and shall be the basis of, and as a consideration of, the contract."

The following questions were propounded to Reppond, and the answers were given by him: The medical examiner asked Reppond whether he had at that time, or ever had, certain diseases named in the application, to which he was required to answer "yes" or "no." Reppond answered that he had had small-pox, or varioloid, and answered also that he had not had typhoid fever, but had had malarial fever. He was asked to give the name and address of each physician who had prescribed for him within the past five years, and the dates and causes of consultation, to which he answered, "Dr. McElroy, Riley Springs, Texas." Upon the application was the following: "I warrant on behalf of myself, and of any person who shall have or claim any interest in any policy issued hereunder, that I have carefully reviewed all answers made to the medical examiner in the foregoing examination, which answers have been written by said medical examiner at my request; and that said answers, and each of them, as hereinabove written, are as answered by me; and that each of the above answers are full, complete and true." The record of health which was referred to in the medical examiner's report showed as follows: "Appended to this special report was a certificate signed by Dr. Goldstein, in which, among other things, he certified that the questions in part two of the application were read by him to Reppond, and separately answered by Reppond; that the answers given to the questions were the identical answers given by Reppond and reviewed by him

in the presence of Dr. Goldstein; and that the answers in part two, as well as the statements made in the special report, were true, to the best of the knowledge and belief of said Dr. Goldstein."

The undisputed evidence showed that Dr. Miller attended Reppond from October 22 to November 11, 1899, and prescribed for him frequently during the time. Reppond's father lived at Riley Springs. Dr. McElroy was the family physician, and lived at the Springs. After Reppond recovered from the fever he visited his father, but there is no evidence whether McElroy did or did not prescribe for him on that visit. In settlement of the premium, Adams, the agent, took an order from Reppond on his employer for $100, which he collected, and took two notes for $100 each, payable to Adams, who testified that he took the notes for the company, but a witness named Frasier, who claimed to have been present at the time of the transaction, testified that Reppond paid Adams thirty or forty dollars in cash, and Adams told Reppond if he would pay money enough to settle with the company, he, Adams, would take notes for his part. Under his contract with the insurance company Adams was entitled to seventy percent of the premium. Adams paid no part of the money that was received by him to the company; but some months after the transaction he sent to the company the notes, with the statement that he had had to take notes in settlement of the premium. The company did not know of the agreement between Adams and Reppond. Dr. Miller testified that he treated Reppond, as stated above, and that his disease was typhoid fever, but there was evidence before the jury upon which they could find, and they did find, that Reppond did not have typhoid fever.

When the first note given by Reppond fell due he refused to pay it, and stated that he would have no more to do with the matter. The company sued him upon the note and obtained judgment' therefor. When the second note fell due the insurance company did not make any demand upon Reppond for its payment, and nothing was ever done about it. Neither note was paid.

The trial court entered judgment for Mrs. Reppond for the amount of the policy, and interest, with attorney's fees and damages under the statute, which judgment the Court of Civil Appeals reversed and rendered in favor of the insurance company.

Counsel for the insurance company insist that the questions involved in this case were decided by this court adversely to the plaintiff in error in refusing a writ of error in the case of National Life Insurance Company v. Reppond, 81 S. W. Rep., 112. That suit was based upon another policy issued under the same application, and, as presented to this court, involved the same questions of warranty and forfeiture for nonpayment of the note given for the premium as in this case, but the difference between the two cases consists in the fact that, in the former, there was no dispute of the proposition that Reppond gave two notes, payable to Adams as the agent, and for the insurance company, for the premiums upon the policies, and that one of the notes had not been paid, therefore there could be no doubt that the failure to pay the note worked a forfeiture of the policy. The effect of the clause of warranty contained in the policy, which was the same as in this, became immaterial in that case and was not passed upon by this court.

In the present case there is evidence which tends to show that the two notes given by Reppond were made payable to Adams in his own right, and were taken under these circumstances: Adams had the right to seventy percent of the first premium upon the policy. The application was made upon the basis that the premium should be paid in cash when delivered. When Adams presented the policy to Reppond the latter was unable to pay the cash, therefore declined to take the policy upon that ground, whereupon Adams suggested to Reppond that, if he would pay enough money upon the premium to enable Adams to settle with the company, that is, to pay to it thirty percent of the premium in cash, he, Adams, would take Reppond's notes, payable to himself, for his part of the premium. If Adams had collected the whole of the premium in cash he could have loaned seventy percent of it to Reppond, paying the other to the company, and we see no reason why he could not make a loan of his part to Reppond without an actual collection of it. By the transaction as here stated the notes became the individual property of Adams, and were not subject to the forfeiture provided for in the policy for the nonpayment of a note given for a part of the premium. The fact that the company acquired the notes from Adams gave it no more right than Adams had. (Pythian Life Ins. Co. v. Preston, 47 Neb., 374; Union Life Ins. Co. v. Parker, 62 Law. Rep. Ann., 390; Thies v. Mutual Life Ins. Co., 35 S. W. Rep., 676.)

The testimony was conflicting upon this proposition, but Frasier's evidence, if true, would be sufficient to support a verdict in favor of plaintiff in error upon that issue, and the credibility of the witness, and the weight to be given to his testimony, were questions for the jury. The Court of Civil Appeals therefore erred in rendering judgment in favor of the insurance company, unless the right of action upon the policy is defeated by a breach of the warranty, as set up and claimed by the insurance company.

The policy of insurance sued upon makes the application a part of the contract, and the application applies the warranty clause to the report of the medical examiner, hence, in determining the question of warranty or not, we must look to all of these instruments. The use of the word "warranty" in the clause relied upon is not to be taken as necessarily creating a warranty in law. (McClain v. Provident S. L. A. Soc., 110 Fed. Rep., 85.)

In Phoenix Assurance Company v. Munger, 92 Texas, 297, Judge Denman defines warranty in insurance policies in the following clear and explicit language: "A warranty in an insurance contract is a statement made therein by the assured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true." Guided by this definition, we will analyze this contract to ascertain what the parties really intended to contract for. The phrase, "without suppression of any fact or circumstance which would tend to influence the company in issuing a policy under this application," applies as well to the report of the medical examiner as to the stipulation in the application, and qualifies the language in each of those instruments, by which it is sought to fix the character of warranty upon the answers and agreements in each. The meaning and intent of the parties in using the language was to say that,

in making the statements and agreements expressed in the application, as well as those that were made to the medical examiner, Reppond undertook in good faith to answer all of the questions that were propounded to him truthfully and fully, and not intentionally to suppress any fact the statement of which would properly be called for by such questions, and that would be material to the risk, or influence the company in issuing the policy. The effect of this language, thus qualifying the terms used, was to make those stipulations amount to representations only, as was held in the case of Assurance Company v. Munger. (Dilleber v. Home Life Ins. Co., 69 N. Y., 256, 25 Am. Rep., 182; McClain v. Provident Sav. Life Assur. Soc., 110 Fed. Rep., 84; Moulor v. American Life Ins. Co., 111 U. S., 340.)

In Dilleber v. Home Life Insurance Company, cited above, a policy much like this was under examination, and the court said: "Taking all the language used, the meaning was that the answers were true, and that they were full, in the sense that the assured had not intentionally concealed or withheld any material fact or circumstance. The assured could not have understood, from all the language used, that, if he answered honestly all the questions put to him, he was to lose the benefit of his policy in case he omitted same fact requisite to make any one of the numerous answers full, because his attention was not particularly called to it, or because it had escaped his attention or memory, or because he did not deem it material to a full answer. Warranties in policies of insurance are strictly construed. They will not be extended to include anything not necessarily implied in their terms."

The parties must have intended to give some effect to the language, "without suppression of any fact or circumstance which would tend to influence the company in issuing the policy under this application," and we can see no other effect that could be given to it except that it should qualify the statements and agreements which are set forth in the application and in the medical examination. If it does not apply to these statements and agreements, then it must impose upon the applicant for insurance the duty to inform the insurance company of all facts which might influence it in issuing the policy, whether called for in the examination of the medical examiner or by questions propounded in the application or not, and we apprehend that no court would hold that such a duty would rest upon the applicant under these circumstances. If the language does apply to the stipulations and terms here sought to be enforced as warranties, then it could have no other effect than to give to the language used the meaning that the statements and answers were made in good faith, and without suppression of any material fact that would properly be given in answer to any of the questions therein propounded. In this view of the case the effect of the omission to give the name of Dr. Miller as one who had attended the applicant would be determined upon the basis of its materiality; if not material, its omission would constitute no defense. (Phoenix Assurance Co. v. Munger, 92 Texas, 303.)

The Court of Civil Appeals erred in holding that the failure to mention Dr. Miller as one of the attending physicians during the time named was a breach of the warranty expressed in the contract. That court had authority to reverse the case upon the ground that the policy was for-

feited by nonpayment of the note, but, the witnesses upon that issue being in conflict, the Court of Civil Appeals erred in entering judgment for the insurance company. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed, and that this cause be remanded to the District Court for another trial.

*Reversed and Remanded.*