Etta E. Daniel v. Modern Woodmen of America.

Decided February 6, 1909.

1.—Insurance Contract—Construction.

In construing the language used in insurance contracts the following rules should be observed: First, the language being selected and used by the insurer to express the terms and conditions upon which it issued the policy, will be strictly construed against it, and liberally in favor of the insured; if the words admit of two constructions, that one will be adopted most favorable to the insured; second, the language used must be construed according to the evident intent of the parties to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto; third, forfeitures are not favored by the law, and if the language used is fairly

susceptible of an interpretation which will prevent a forfeiture, it will be so interpreted.

### 2.—Same—Warranty.

In an application for life insurance, the insured stated, in answer to questions propounded to him, that he had never been intoxicated and that his maternal grandmother had never been afflicted with insanity. The application was made a part of the policy and said statements as well as many others of like character were declared to be warranties upon the truth of which the validity of the policy should depend. In a suit upon the policy the jury found that said statements were not true. The trial court held that said statements were misrepresentations of facts which, under the warranty clause of the contract of insurance, rendered the policy void. Held, error. Said statements were not statements of facts but of opinion merely, and if the applicant in good faith believed them to be true their falsity would not vitiate the policy.

### 3.—Same—Insanity—Drunkenness—Opinion.

Insanity and drunkenness are conditions each of which is of different degrees, often difficult of ascertainment, and it is elementary that testimony to prove the existence of such conditions is that of opinion formed by the exercise of the reasoning faculties from given circumstances, and is never admissible unless the witness is an expert, or has had an opportunity to form an opinion from observations of the person whose condition in that respect is to be ascertained.

### 4.—Insurance Policy—Warranty—Definition Approved.

A warranty in an insurance contract is a statement made therein by the assured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true.

### 5.—Same—Warranty—Materiality.

The warranty clause in an application for life insurance contained the following language: "And I agree that the exact literal truth of each (answer) shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers." Intimated, that by the use of the word "faith" in the provision quoted, the correct construction of that stipulation would be that in order for the insurance company to defeat the policy by reason of misrepresentations contained in the applicant's answer, it would be required to prove that its officers believed such answers to be true and that such belief so formed was one of the inducements which led them to issue the policy. To say that proof of falsity of some of the answers of the applicant would show breach of his contract of warranty and entitle the company to a judgment decreeing the policy void irrespective of any other consideration, would be to ignore altogether the above quoted stipulation in the application.

Appeal from the District Court of Tarrant County. Tried below before Hon. J. H. Calhoun.

*D. G. Hunt,* for appellant.—If the court had the legal right to render a judgment on the partial verdict of the jury then the judgment should have been for the plaintiff, for it was shown and not denied that the defendant issued the benefit certificate sued on to a charter member, that such member was dead, that the certificate was in good standing at the time of his death and that the plaintiff was the beneficiary and wife of deceased, and the only defense was that fifteen years prior to the issuance of such certificate the grandmother of the assured had become insane, when the assured said that none of his relatives had been so afflicted, and also that assured answered

that he had never been intoxicated, when some of the witnesses said that he had been intoxicated, and in the absence of allegations and proof that such facts were material to the contract the judgment should have been for the plaintiff, and especially when the jury find that the death of the assured was not brought about by the use of intoxicants. Woodmen of the World v. Farley, 94 Texas, 200; Home F. B. O. v. Jones, 20 Texas Civ. App., 68; Home F. B. O. v. Varnado, 55 S. W., 367; Woodmen of World v. Gray, 64 S. W., 801; Woodmen O. W. v. Locklin, 28 Texas Civ. App., 486; Provident Soc. v. Beyer, 67 S. W., 827; Equitable L. A. v. Liddell, 32 Texas Civ. App., 252; Modern O. O. Pretorians v. Hollmig, 100 Texas, 623; Woodmen O. W. v. Torrence, 103 S. W., 653.

*Stubblefield & Patterson,* for appellee.—If E. L. Daniel made a false statement to the effect that his maternal grandmother was not insane, and also made a false statement to the effect that he had not, prior to the making of the application for a benefit certificate, been intoxicated, said false statements would render the benefit certificate null and void, under the contract, and the plaintiff was not entitled to recover in this case. Modern Order of Pretorians v. Hollmig, 100 Texas, 623; Modern Order of Pretorians v. Hollmig, 105 S. W., 846; Supplement to Sayles' Statute, page 267; Kansas Mutual Life Ins. Co. v. Pinson, 94 Texas, 553; National Life Ins. Co. of the U. S. v. Reppond, 96 S. W., 778; 25 Cyc., page 818.

DUNKLIN, ASSOCIATE JUSTICE.—Etta E. Daniel sued the Modern Woodmen of America in the District Court of Eastland County to collect an insurance policy in her favor for one thousand dollars issued upon the life of her husband, Esco L. Daniel, and from a judgment in favor of the defendant the plaintiff has appealed.

The defendant was chartered under the laws of the State of Illinois as a fraternal beneficiary association, and obtained a permit to do business in Texas as such a corporation. The policy sued on was made payable to plaintiff upon the death of the assured, and was issued October 25, 1905, upon an application in writing signed by Esco L. Daniel, dated October 12, 1905. The application was for membership in the defendant's order and for a life insurance policy, designated "benefit certificate," for the sum of one thousand dollars in favor of the applicant's wife, Etta E. Daniel. This application contained numerous questions to applicant and his answers thereto concerning his family history, his own history, health, occupation and habits of life, and in response to two questions the applicant stated that he had never been intoxicated and that his maternal grandmother, who died at the age of sixty-nine, was never insane. It was expressly stipulated in the application and in the policy that the two instruments should be construed together as constituting the contract of insurance, and by the terms of the application and the policy the answers of the applicant were warranted to be true. He also warranted the truth of all answers made by the physician who examined him and whose report accompanied the application. Applicant's own answers were in thirty-five groups, aggregating approximately one

hundred in number, and the answers of the medical examiner numbered approximately fifty. The questions to which all these answers were given took an exceedingly wide range, embracing questions as to color of hair and eyes of the applicant and inquiries concerning almost all the ills that "flesh is heir to," taken in alphabetical order, beginning with appendicitis and ending with tumors. And by the terms of the contract applicant warranted the exact ages, as well as good health, of all the members of his immediate family, that he resembled his mother in general characteristics, also warranted the correctness of the diagnosis given of the ailments which resulted in the deaths of his paternal grandfather and both his maternal grandparents. He also warranted the exact ages of those three grandparents at the respective dates of their deaths; however, it seems that the applicant was not required to warrant the age, health or disposition of his mother-in-law. Applicant paid to the company all dues on the policy required of him up to the date of his death, which occurred July 17, 1906.

The case was submitted to the jury upon special issues, four of which, with the jury's answers thereto, were as follows:

"Question Second. Had the assured been intoxicated prior to the time he signed the application for membership in the defendant company October 12, 1905?

"Answer. He had been intoxicated.

"Question Third. If the assured had been intoxicated prior to October 12, 1905, the time he signed the application for membership and benefits in the defendant company, was his answer to the effect that he had never been intoxicated, a misrepresentation as to a material matter?

"Answer. We fail to agree and can not agree.

"Question Sixth. Had the grandmother of Esco L. Daniel (his mother's mother) been afflicted with insanity prior to the 12th day of October, A. D. 1905, the date that the assured signed the said application for membership in the defendant company?

"Answer. Yes.

"Question Seventh. If the grandmother of the assured had been afflicted with insanity prior to October 12, 1905, was the answer or statement of the assured in said application then signed by him, 'to the effect that she had not been so afflicted,' a misrepresentation as to a material matter?

"Answer. We fail to agree and can not agree."

The jury further found that the death of the assured was not the result of the use of intoxicants, and it seems that appellee made no contention that he was ever insane, and the evidence shows that he was run over and killed by a railway train. Under these findings of the jury the court rendered judgment in favor of the defendant, thus holding that the falsity of the statements made by the applicant that he had never been intoxicated and that his maternal grandmother was never afflicted with insanity were misrepresentations of facts which under the warranty clause of the contract of insurance rendered the policy void. In this ruling we think there was error which requires that the judgment should be reversed.

In the case of Brown v. Palatine Ins. Co., reported in 89 Texas, 590, involving the proper construction of a fire insurance policy, Justice Brown delivering the opinion of the court, said: "Since the language calls for construction to determine what the parties intended, that construction must be governed by the following familiar rules of law: First, the language, being selected and used by the insurer to express the terms and conditions upon which it issued the policy, will be strictly construed against it, and liberally in favor of the insured. If the words admit of two constructions, that one will be adopted most favorable to the insured. Wood on Fire Ins., sec. 60; Bills v. Hibernia Ins. Co., 87 Texas, 551; Goddard v. East Texas F. Ins. Co., 67 Texas, 71; Equitable Ins. Co. v. Hazelwood, 75 Texas, 347. Second, the language used must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto. Wood on Fire Ins., secs. 182-187; Whitney v. Black River Ins. Co., 72 N. Y., 117. Third, forfeitures are not favored by the law, and, if the language used is fairly susceptible of an interpretation which will prevent a forfeiture, it will be so construed. 1 Wood Fire Ins., sec. 181, p. 436."

The statements of the applicant which the jury found to be false were not statements of facts, but of opinion merely, and if the applicant in good faith believed them to be true, their falsity would not vitiate the policy. Insanity and drunkenness are conditions each of which is of different degrees, often difficult of ascertainment, and it is elementary that testimony to prove the existence of such conditions is that of opinion formed by the exercise of the reasoning faculties from given circumstances, and is never admissible unless the witness is an expert, or else has had an opportunity to form an opinion from observations of the person whose condition in that respect is to be ascertained. This rule of evidence is not fixed by any arbitrary standard, but has as its basis a truth sanctioned by reason and common experience that it is impossible for anyone to testify to more than an opinion on such issues. The legal significance of the answers of the applicant that he had never been intoxicated and that his maternal grandmother had never been afflicted with insanity is not changed by the fact that those answers were not made to questions propounded in a judicial proceeding then pending; and since they are now to be judicially interpreted, no reason is perceived why they should be given a construction different from that above stated. (Supreme Ruling Fraternal Mystic Circle v. Crawford, 32 Texas Civ. App., 603; 1 May on Insurance, secs. 175, 296, 297.)

In section 296, *supra,* the author uses the following language: "A 'serious illness' must be one which permanently impairs the constitution and renders the risk more hazardous. So, if the inquiry be as to the prior existence of disease having a tendency to shorten life, or rendering an assurance upon it more than usually hazardous, an honest belief in the truth of his answer is all that is required of the applicant. . . . In such cases the rule seems to be that if the inquiry call for an answer which involves a matter of opinion, the applicant is answerable only for the honesty of his opinion, al-

though the answer be untrue in fact. So, where it was untruly stated that the party had not had rupture."

The warranty clause in the application signed by Esco L. Daniel is as follows: "I have verified each of the foregoing answers and statements from one to thirty-five, both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete, and literally true, and I agree that the exact, literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers. I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof, and that they shall be construed together as one entire contract; and I further agree that if any answer or statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the laws of the said Modern Woodmen of America, whether now in force or hereafter adopted, that my benefit certificate shall be void."

The policy sued on, among other provisions, contains the following stipulations: "That the application for membership in this society made by the said member, a copy of which is hereto attached and made a part hereof, together with the report of the medical examiner, which is on file in the office of the head clerk, and is hereby referred to and made a part of this contract, is true in all respects, and that the literal truth of such application and each and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of this society to such member, and to his beneficiary or beneficiaries, the same as if fully set forth in this benefit certificate.

"2. That if said application shall not be literally true in each and every part thereof, then this benefit certificate shall, as to said member, his beneficiary or beneficiaries, be absolutely null and void.

"3. This certificate is issued in consideration of the warranties and agreements made by the person named in this certificate in his application to become a member of this society, and also in consideration of the payment made when adopted as a Neighbor in prescribed form, and his agreement to pay all assessments, dues and fines that may be levied during the time he shall remain a member of this society . . . if his said application for membership, or any part of it, shall be found in any respect untrue, then this certificate shall be null and void and of no effect, and all moneys which have been paid, and all rights and benefits which may have accrued on account of this certificate, shall be absolutely forfeited and this certificate shall become null and void."

Some of the members of this court feel inclined to hold that each and all stipulations warranting the truth of the applicant's answers should be construed in connection with and controlled by the follow-

ing language in the first portion of the warranty clause in the application quoted above, to wit: "And I agree that the exact, literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers." Following is the reasoning advanced to support this position: The definition of the word "faith" found in Webster's Unabridged Dictionary is: "A firm conviction of the truth of what is declared by another by way either of testimony or authority without other evidence; belief in what another states, affirms, or testifies simply on the ground of his truth or veracity; especially (as distinguished from mere belief) practical dependence on a person, statement or thing as trustworthy." Applying this definition to the word faith as used in the provision of the application last quoted, the correct construction of that stipulation would be that in order for the insurance company to defeat the policy by reason of misrepresentations contained in applicant's answers, it would be required to prove that its officers believed such answers to be true and that such belief so formed ,was one of the inducements which led them to issue the policy.

The case of Sovereign Camp of Woodmen of the World v. Gray, reported in 64 S. W., 801, was a suit on a policy by the terms of which the answers of the applicant were warranted to be true, and further, that the policy "shall be null and void and of no effect . . . if any of the statements or declarations in the application for membership and upon the faith of which this certificate was issued shall be found in any respect untrue." Delivering the opinion of the court in that case, Chief Justice Conner, in discussing the alleged falsity of a statement of the applicant and upon which payment of the policy was sought to be avoided, said: "If false, to avoid the certificate it must be shown to be not only an answer relating to the insurance feature, but also one upon the faith of which the policy issues. The burden is certainly on the appellant to do this, and no proof to this effect is found in the record." See also Aetna Life Ins. Co. v. Wimberly, 108 S. W., 783; New Orleans Ins. Co. v. Gordon, 68 Texas, 148; Reppond v. National Life Ins. Co., 100 Texas, 519.

The case of Reppond v. National Life Ins. Co., cited above, was a suit by Annie Reppond to collect a policy upon the life of her husband, John T. Reppond, issued upon an application signed by the latter, containing the following terms: "The statements and agreements made by me in this application, as well as those I have made and shall make to the company's medical examiner are hereby warranted by me to be full, complete and true without suppression of any fact or circumstance which would tend to influence the company in issuing a policy under this application, and shall be the basis of, and as a consideration of, the contract." Having stated in response to questions propounded by the company's medical examiner that he had been afflicted with certain ailments, he was next asked to give the name and address of each physician who had treated him for those ailments, and in reply to this question he gave the name of one of his attending physicians, but omitted the name of another who had also treated him. The medical examiner's report of these

answers was made a part of the application, and upon the application was the following: "I warrant on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, that I have carefully reviewed all answers made to the medical examiner in the foregoing examination, which answers have been written by said medical examiner at my request, and that said answers and each of them as hereinabove written are as answered by me, and that each of the above answers are fully complete and true." In delivering the opinion of the court in that case Justice Brown said: "In Phoenix Ins. Co. v. Munger, 92 Texas, 297, Judge Denman defines warranty in insurance policies in the following clear and explicit language: 'A warranty in an insurance contract is a statement made therein by the assured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true.' Guided by this definition, we will analyze this contract to ascertain what the parties really intended to contract for. The phrase, 'without suppression of any fact or circumstance which would tend to influence the company in issuing a policy under this application,' applies as well to the report of the medical examiner as to the stipulation in the application, and qualifies the language in each of those instruments by which it is sought to fix the character of warranty upon the answers and agreements in each. The meaning and intent of the parties in using the language was to say that, in making the statements and agreements expressed in the application as well as those that were made to the medical examiner, Reppond undertook in good faith to answer all of the questions that were propounded to him truthfully and fully, and not intentionally to suppress any fact the statement of which would properly be called for by such questions, and that would be material to the risk, or influence the company in issuing the policy. . . . The parties must have intended to give some effect to the language, 'without suppression of any fact or circumstance which would tend to influence the company in issuing the policy under this application;' and we can see no other effect that could be given to it except' that it should qualify the statements and agreements which are set forth in the application and in the medical examination."

The circumstances in evidence indicate that the application signed by Esco L. Daniel was printed in blank form when presented to assured, previously prepared by appellee in terms of its own selection, and this is certainly true of the policy issued thereon. To say that proof of falsity of some of the answers of the applicant would show breach of his contract of warranty and entitle the appellee to a judgment decreeing the policy void irrespective of any other consideration, would be to ignore altogether the above quoted stipulation in the application, "and I agree that the exact, literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers," which is wholly inconsistent with such a contention.

But irrespective of the views last expressed, for the error in the

ruling of the trial court above noted, the judgment of that court is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.