FANNIE SCHAS v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 15 December, 1915.)

**1. Appeal and Error—Prejudicial Error.**

Mere error in the trial of a cause will not induce the Supreme Court to order a new trial; for it should reasonably appear that the error was prejudicial to the appellant's right and that the new trial sought would result differently, if ordered.

**2. Insurance, Life—Application—Serious Illness—Questions for Jury.**

Where the applicant for a policy of life insurance has been required to state his last serious illness, and there is conflicting evidence as to whether a certain illness of his was of a serious character, and the insurer seeks to invalidate the policy on that ground, it presents a question for the determination of the jury.

**3. Same—Serious Injury—Temporary Illness—Permanent Injury.**

An illness of the insured sufficient to invalidate a policy of life insurance, where the insured contends that the applicant had made a false statement thereof in his application for the policy, must be of such character as to permanently affect the health of the insured, and not such as is transitory or does not affect the desirability of the risk, and expert medical evidence that a habit of the insured, existing before the application was made, by the impairment of his health produced a serious illness, is insufficient to invalidate the policy, it having been established by the verdict of the jury that it had not done so.

APPEAL by defendant from *Webb, J.,* at February Term, 1915, of BUNCOMBE.

*Mark W. Brown for plaintiff.*
*Bourne, Parker & Merrimon and T. F. Davidson for defendant.*

WALKER, J.   This case was before us at a former term and is reported in 166 N. C., 55. We then ordered a new trial for errors committed in the trial below. At the February Term, 1915, it was again tried upon issues and the jury returned the following verdict:

1. Did the insured, Lewis Schas, at the time of signing the application for the policy sued on, represent that he had not been under the care of a physician within two years next preceding date of said application, as alleged in the complaint?   Answer: Yes.

2. Had the insured, Lewis Schas, been under the care of a physician within two years preceding the date of said application?   Answer: No.

3. Did the insured, Lewis Schas, represent at the time of making his application for the insurance that the policy should not take effect until the first premium had been paid during his good health?   Answer: Yes.

4. At the time of the payment of said first premium, was said Lewis Schas in good health?   Answer: Yes.

5. Did the insured, Lewis Schas, at the date of his application for the policy of insurance, represent that he had not had any serious illness or disease, except diseases incident to childhood?   Answer: Yes.

6. Had Lewis Schas had any serious illness or disease, except diseases incident to childhood, at the time of his application for the insurance policy sued on?   Answer: No.

7. Was the death of insured brought about by his own intentional self-destruction, as alleged in the answer?   Answer: No.

The defendant has appealed from the judgment rendered upon the verdict. The questions of evidence are unimportant and call for no special comment. Some of the questions were not answered, and, therefore, no harm was done, and where they were asked by defendant, and ruled out, it does not appear what the answers would have been or what was expected to be proved, so we can see that there was prejudice. *In re Smith's Will*, 163 N. C., 464; *S. v. McKenzie*, 166 N. C., 290; *S. v. Lane, ibid.*, 333.

Harmless error is not ground for a reversal. The ruling must be material, and prejudicial to appellant. The instruction as to what constituted "serious illness" was substantially correct, and we think that the jury must have fully understood what is meant by the term, as used in the policy. On the conflicting state of the evidence as to whether the illness of the deceased was a serious illness, it was for the jury to whom the case was submitted to decide. The question propounded to the applicant did not require him to give information as to the last illness he had suffered, but the last serious illness. Not every illness is serious. An illness may be alarming at the time, or thought to be serious by the one afflicted, and yet not be serious in the sense of that term as used in insurance contracts. An illness that is temporary in its duration, and

entirely passes away, and is not attended, nor likely to be attended, by a permanent or material impairment of the health or constitution, is not a serious illness. It is not sufficient that the illness was thought to be serious at the time it occurred, or that it might have resulted in permanently impairing the health. *Ins. Co. v. Wilkinson,* 13 Wall., 222, 20 U. S. (L. Ed.), 617. "A cold may be, and sometimes is, followed by pneumonia, pleurisy, abscess of the lungs, and consumption; but to hold that because a cold may be attended or followed by such consequences it is a serious illness, and that a failure to mention such in response to an inquiry in an application for insurance as to the nature and character of any serious illness the applicant has suffered, would result in invalidating almost all contracts of insurance, the covenants of which are based upon the statements in the application as warranties; for, if a careful investigation should be made into the lives of persons insured, in almost every life there would be found some incident of illness of such ordinary occurrence and insignificance in its effect, yet of possible seriousness, which the applicant, without careful scrutiny and accurate recollections of his past life, has overlooked to mention." *Em. Ho. of Col. Woodmen v. Prater,* 20 Am. and Eng. Anno. Cases, 287, and notes. It has been held that if the affliction is of a permanent character it must certainly be a serious one; and if it is merely temporary, and to pass away without serious results, it cannot well be said to render the person unsound in his general health. The word "serious" is not generally used to signify a dangerous condition, but rather to define a grave, important, or weighty trouble. *Brown v. Ins. Co.,* 65 Mich., 306. Serious or severe illness does not include the ordinary diseases of the country which yield readily to medical treatment, and, when ended, leave no permanent injury to the physical system, but refers to those severe attacks which often leave a permanent injury and tend to shorten life. *Holloman v. Ins. Co.,* 1 Woods, 674 (*s. c.,* 12 Fed. Cases, No. 6623).

In Webster's Dictionary the word "serious" is defined as something "giving rise to apprehension; attendant with danger; as a serious injury or condition; important, weighty, not trifling, grave"; and we find substantially the same definitions given in the other dictionaries. The Court, in *Caruthers v. Ins. Co.,* 108 Fed., 487, gives the same meaning to those words and states that, as the company saw fit to use the word "serious," it should not complain that the applicant failed to mention, in reply to its question as to whether he had ever been ill, every slight ailment. It was held in *M. B. Society v. Winthrop,* 85 Ill., 542, that a statement in an application for life insurance, that the applicant has had no serious illness, will be construed to mean that he has never been so ill as to permanently impair his constitution, and render the risk unusually hazardous. *Justice Walker,* for the Court, said in that case, at page 542: "What is to be understood by 'serious illness'? If any

sickness which may terminate in death, then it must embrace almost every distemper in the entire catalogue of diseases. To give such an interpretation to this expression would, we have no doubt, defeat a recovery on a large majority of the certificates issued by the society. The true construction of the language must be that the applicant has never been so seriously ill as to permanently impair his constitution and render the risk unusually hazardous. It seems to us that this is the only reasonable construction that can be given to the language. It is reasonable and is fair to both parties, and works no hardship or injustice to any one, whether the answers are warranted to be true or only as a fair statement of facts, honestly and truly given as understood by the applicant." See, also, *French v. F. & C. Co.,* 135 Wis., 259; *Drakeford v. Knights of Damon,* 61 S. C., 338; *Woodman v. Prater,* 24 Okla., 214; *Hockaday v. Jones,* 56 Pac., 1054; *Daniel v. Mod. Woodmen,* 118 S. W., 211, 213; *Ins. Co. v. Wilkinson, supra.*

We are inclined to the opinion, from the medical testimony, that the trouble which, as the defendant alleges, afflicted the insured, may have been, in some circumstances, of a serious nature, if the result of constant indulgence. If it was a physical and mental condition of the patient, which supervened a long and persistent course of self-abuse, or masturbation, and was calculated to impair permanently his constitution, it was serious within the meaning of any definition we have found; but the jury, we think, have so effectually disposed of the defendant's contention in regard to the existence of any such condition or illness that any discussion of the meaning of words would be futile. We must assume, in the absence of the charge, which was not sent to this Court, that the judge properly submitted the issues to the jury, other than in the instruction to which exception was taken, and, as to this one, it may be said, that defendant's contention practically was that the habit of the applicant was of such a kind as to impair his health and vigor, if he was in fact addicted to the degrading and vicious practice. The jury have virtually found that he was not, for if that is the inevitable or even probable tendency of the habit, as testified by the physicians, they have found that his health was good, or sound, or, as we understand it, that it was unimpaired when he paid the first premium, and this could scarcely have been so if he had been a victim of onanism or self-pollution. As was said substantially in the *Craven will case,* 169 N. C., 561: There are many exceptions in the case, but on a careful examination of the record we do not think that, if there was any error in the rulings of the court to which they were taken, it constitutes sufficient ground for granting a new trial. It is not any and every error committed during the course of a trial that will induce an appellate court to set aside a verdict and judgment and award a new trial, as before this is done there should be both error and prejudice to the appellant.

If he is not harmed by the ruling there is no reasonable ground of complaint. We also referred to this principle in *S. v. Smith,* 164 N. C., 480, 79 S. E., 982, and, more recently, in *S. v. Heavener,* 168 N. C., 156, and *Ferebee v. Berry,* 168 N. C., 282.

We find this in the record at page 89: "The court gave the contentions of both parties fully, and charged upon the law applicable to the case, as the court understands it, keeping in mind the decision rendered in this case by the Supreme Court." Taking a broad and practical view of the case, upon its legal merits, as disclosed by this record, if there has been any error it is manifestly of such little moment as not to have affected the verdict in the least.

The defendant has had two fair opportunities to defeat the plaintiff's recovery, and we are convinced that should there be another trial the result would be the same. We are not disposed to prolong the litigation upon trivial grounds, even if there had been error which we can see had not prejudiced the defendant. The case has been fairly tried in accordance with the directions given in the former opinion of this Court, and it is perfectly evident that the juries were against the defendant's contentions on the facts.

No error.