LOESCH v. SUPREME TRIBE OF BEN HUR. (No. 8473.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 25, 1916. Rehearing Denied Dec. 16, 1916.)

1. INSURANCE ☞726—BENEFIT INSURANCE—CONTRACT—CONSTRUCTION.

The ordinary rules and principles governing the construction of contracts would apply to the construction of a contract of benefit insurance, unless changed, modified, or abrogated by statute.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1870–1872; Dec. Dig. ☞726.]

2. INSURANCE ☞723(7)—FRATERNAL INSURANCE—WARRANTIES—FAMILY HISTORY.

As statements made with reference to family history cannot be held to be warranties and an insurance policy is to be construed most liberally in favor of the insured, where an applicant for a certificate of benefit insurance believes statements as to family history to be true, their falsity will not necessarily vitiate a certificate, stipulating that the truth of each shall be a condition precedent to any recovery issued on the faith of the answers.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞723(7).]

3. INSURANCE ☞723(7)—BENEFIT INSURANCE—WARRANTIES.

Where the constitution of a fraternal benefit society provided that the executive committee shall have full power and authority to revoke any beneficial membership and to cancel any certificate for fraud or misrepresentation in its procurement, or for any false answer made by an applicant, on notice to the applicant and hearing of charges in this respect, the warranties regarding family history, in an application for certificate, were intended to protect the society only against misrepresentation of facts material to the risk assumed.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞723(7).]

4. INSURANCE ☞723(7)—BENEFIT INSURANCE—STATEMENT IN APPLICATION—NOTICE.

The fact that an applicant for a certificate of benefit insurance stated in her application that she had one sister dead would put the society, through its medical examiner, on notice as to the cause of said deceased sister's death.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞723(7).]

5. INSURANCE ☞819(2) — BENEFIT INSURANCE—EVIDENCE—SUFFICIENCY.

In an action on a certificate of benefit insurance, evidence *held* insufficient to show that it was not the family history that the insured's mother died of typhoid fever, that the applicant willfully concealed any knowledge with refer-

---

ence to the death of her sister, or to establish the suicidal death of the sister, or to show that the real facts, as disclosed by the evidence, would have been material if disclosed by insured or affected the risk assumed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2007; Dec. Dig. ⚬�longdash819(2).]

6. INSURANCE ⚬⟷817(2)—BENEFIT INSURANCE —EVIDENCE—BURDEN OF PROOF.
In an action on a certificate of benefit insurance, the burden of proof was on the defendant to establish the alleged falsity of the answer of the insured in her application as to the cause of her mother's death.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2001; Dec. Dig. ⚬⟷817(2).]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Suit by H. F. Loesch against the Supreme Tribe of Ben Hur. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Stanley Boykin, of Ft. Worth, for appellant. Ocie Speer and Marvin H. Brown, both of Ft. Worth, for appellee.

BUCK, J. The appellant sued the appellee upon a beneficiary certificate in the sum of $2,000, issued on the life of his wife, deceased, Dollie Loesch. The beneficiary under the original policy was the son of Mrs. Loesch, Lester Lee Harris, but subsequently the appellant was made beneficiary instead. Upon suit being filed upon said policy, the defendant denied liability, and specially pleaded that certain alleged false statements had been made by the said Dollie Loesch in the application for said policy in answer to questions propounded by the medical examiner, and that such answers and representations were in the nature of warranties, and that, being false, they vitiated and made void any obligation based thereon entered into by defendant.

The application containing these questions and answers thereto was not attached to, and made a part of, the policy. The alleged false answers were: (1) To the effect that the applicant's mother had died at the age of 47 of typhoid fever, and was sick one month, and that her previous health was good; whereas, defendant alleged the truth to be that the mother of deceased died of cancer, and that she was an invalid for more than six months prior to her death. (2) That applicant was asked if she had a sister or sisters, and, if so, the age, or ages, of the living, and, if dead, the age at death, the cause of death, how long sick, and the previous condition of the health of deceased to which, defendant alleged, applicant answered that she had one sister living, and that her health was good; whereas, in truth and in fact she had one sister dead, who had died a short time prior to the making of the application for the beneficial certificate. (3) That applicant was asked if any member of her family or near relative had "ever committed, or at-

tempted to commit, suicide, or had consumption, raising of blood, rheumatism, insanity, cancer, gout, epilepsy, or other hereditary disease," to which applicant answered, "No;" whereas, it was alleged that in truth and in fact the deceased sister had died from the effects of poison administered with suicidal intent, and that applicant's mother had died, as aforesaid, of cancer.

It was alleged by defendant that if it had known that these answers were untrue and had known the facts to be as defendant alleged them to be, it would not have issued the certificate on the life of the deceased, Dollie Loesch; that said application, together with the constitution and by-laws of the defendant, Supreme Tribe of Ben Hur, constituted a part of the contract of insurance, and that the defendant had issued the policy, relying upon the literal truth of the answers to the questions as written.

Plaintiff, in a supplemental petition, without admitting that Dollie Loesch made any false or fraudulent answers in the application and medical examination, pleaded that the portion of the act of the Thirty-Third Legislature known as article 4830, and also article 4957, of the Revised Statutes, are each unconstitutional and void, for the reason that the subject expressed by said articles, and each of them, was not contained in the title and caption of the act of the respective Legislatures that passed the said laws, as provided by article 3, § 35, of the Constitution of Texas. The unconstitutionality of article 4830 was pleaded upon other grounds not necessary here to mention. It was further pleaded that, even though it should be conceded that in certain respects the answers of the deceased to the questions hereinabove set out were not literally true, and were in part a misstatement of the real facts, yet they were not material to the risk assumed, and therefore were not a sufficient basis for avoiding the policy.

A trial was had before a jury, and at the conclusion both parties requested a peremptory instruction, and the request of the defendant was granted, and plaintiff appeals.

[1] As we view the case presented by the pleading and proof, it is not incumbent upon us to determine (1) whether article 4948, Vernon's Sayles' Texas Civil Statutes is applicable to the character of policy here sued upon; (2) whether article 4830, under chapter 7, and under title "Fraternal Benefit Societies," is void for unconstitutionality, in that the exemption provided for in this article was not mentioned in the caption of the original act; (3) nor as to whether article 4957, Id., is void also, as being in contravention of article 3, § 35, of the Constitution of Texas. But we will discuss the questions raised without reference to the constitutionality vel non of the last two mentioned articles, or the applicability of article 4948 to policies

issued by fraternal benefit societies. We think it can be safely stated that, even though it should be held that article 4948 has no application to this character of insurance policies, yet that the ordinary rules and principles with reference to construing contracts would apply, unless they have been changed, or modified, or abrogated by statute, and especially by statutory enactment with reference to fraternal benefit societies.

We will now take up and discuss each of the answers alleged to be false, made by deceased in her application; and, to make what we have to say the more intelligible, we will here insert question 23 and the answers thereto, as they appear in the application:

23. Family History. In the matter of family history, state the specific cause of death, especially when there may be a suspicion of consumption. Such general terms as "exposure," "general debility," "childbirth," "change of life," "effects of cold," "fever," etc., without explanation are not satisfactory. If the health of any living member of the family is stated as "fair," or "poor," state the nature of the ill health. If a doubt exists as to cause of death in any case, make a statement whether there was any suspicion of tuberculosis.

| | Age if Living. | Condition of Health. | Age at Death. | Cause of Death. | How Long Sick. | Previous Health. |
|---|---|---|---|---|---|---|
| Father | 68 | Good | | | | |
| Mother | | | 47 | Typhoid fever. | 1 mo. | Good. |
| Brothers No. — | 26 | Good | | | | |
| Sisters No. 1 | 22 | Good | | | | |

It will be noted that the matters inquired about are under the title of "Family History," and that presumably the inquiry is expected to elicit information received from that source. It must be conceded that in the main the knowledge one has of the ages, state of health, cause of death, etc., of his relatives must be based upon information received from others, hearsay in its nature. Information as to the age of one's parents, or older brothers or sisters, or even of one's own age, is necessarily derived from information received from others. There is no evidence to show that Mrs. Loesch was present at the time of her mother's death, or knew of the nature, or the duration, of her last sickness, except as she was informed by those present. Nor is there any proof that it was not a part of the family history that her mother died of typhoid fever. Dr. Camp testified for the defendant that he waited upon Mrs. Draper, mother of deceased, and made a microscopic examination, and found her case to be one of malignant cancer, and that such was his diagnosis. There is no evidence to which we have been directed going to show that Dr. Camp imparted the information he had received through the microscopic examination to the insured, or indeed to any member of her family. The application and other evidence show that at the time the application was made, to wit, September 30, 1913, Mrs. Loesch resided in the city of Ft. Worth, and had resided there for 2 years prior to said date, while the evidence further shows that her mother died February 5, 1910, at Joplin, Mo. It is true that Mrs. A. H. Henderson testified that she was a neighbor of Mrs. Draper at the time of her death, and had known her for about six months prior thereto, and nursed her at times during such period, and that the malady or disease from which Mrs. Draper was suffering was cancer of the bowels. There is no evidence to show that Mrs. Henderson confided her information or belief as to the nature of the malady with which Mrs. Draper was suffering to the insured, or that she knew insured. She did testify:

"She (Mrs. Draper) was confined to her bed from the effects of her malady, illness, or disease, from which she died, about five or six weeks next prior to her death."

And Dr. Camp testified:

"She was confined to her bed about one month prior to her death."

There is no contention that Mrs. Loesch died of any cancerous affection, or that she committed suicide. Certainly, we do not think it should be held that the statements made with reference to family history can be held to be warranties. In Assurance Co. v. Cotton Machine Mfg. Co., 92 Tex. 297, 49 S. W. 222, our Supreme Court defines warranty as follows:

"A warranty in an insurance contract is a statement made therein by the assured, which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true."

See Fidelity & Casualty Co. v. Carter, 23 Tex. Civ. App. 359, 57 S. W. 315, 317.

[2] Certainly, it was not expected that the applicant, in answer to the questions propounded, could give more than what she believed to be true, based upon the family history. These answers are necessarily largely a matter of expression of an opinion, and under the well-established rule that an insurance policy shall be construed most liberally in favor of the insured, and, as held in Daniel v. M. W. of A., 53 Tex. Civ. App. 570, 118 S. W. 211, where an applicant in good faith believes the statements to be true, their falsity will not necessarily vitiate a certificate warranting the truth of the applicant's answers, and stipulating that he agrees that the literal truth of each shall be a condition precedent to a recovery on any contract issued on the faith of the answers. See, also, M. W. of A. v. Owens, 60 Tex. Civ. App. 398, 403, 130 S. W. 858, 861. While the last-cited case holds that where answers and an application were expressly made a part of the benefit certificate, and were expressly made warranties, the question of good faith in mak-

ing the answers, if they were false, is immaterial, since express warranties must be literally complied with, yet, as limiting this rule by the particular facts shown on that case, the Court of Appeals for the Third District held that:

"Unless there is some good reason to the contrary, parties to a contract are presumed to have meant what they would reasonably understand each other to mean under the circumstances of the case by the language used. In this case, Owens had previously waited on his brother, who died of typhoid fever, but it does not appear from this that he knew that the germs of that disease were in his system, and would probably develop in the near future. We take it that his answer that he did not have typhoid fever was true, in the sense that the parties must have understood each other at the time, though a physician may be able to say from the fact that he had typhoid fever three days later that the germs of said disease were then in his system and in process of development."

In Reppond v. Insurance Co., 100 Tex. 519, 101 S. W. 786, 15 Ann. Cas. 618, 11 L. R. A. (N. S.) 1981, the Supreme Court held that the use of the word "warranty" did not necessarily create a warranty in law, unless it appeared that the parties mutually intended that the policy should not be binding if the statements were not literally true.

As shedding light upon the sense in which the parties to this contract used the words "warranties" and "warrant," we may refer with propriety to the constitution of the defendant society, by the application and policy made a part of the contract entered into between deceased and the society. Section 21 provides that the executive committee shall have full power and authority to revoke any beneficial membership, and to cancel any certificate "for any fraud practiced, or misrepresentation made, in its procurement, or for any false answer made by an applicant in his application for beneficial certificate or beneficial membership," etc., and further provides for notice to the insured of the charges of fraud or misrepresentation made, and for a hearing thereon; and said section further provides:

"If the executive committee, after hearing the charges and all the evidence, and being fully advised in the premises, shall find that the allegations and charges are true, and that it is sufficient cause for the cancellation of the beneficial certificate, or the revoking or annulling of the beneficial membership, the executive committee shall thereupon revoke, cancel, or annul such beneficial certificate and beneficial membership," etc.

Section 103, Id., under the title "False Statements," provides, in part:

"Whenever it shall come to the knowledge of the executive committee of the Supreme Tribe that a beneficial certificate has been obtained by false representations or concealment *of any material fact* (italics ours) * * * they may at once inquire into the fact, and if they find such charges true"

—the section then further providing for a trial upon such charges.

[3] We think it is evident from these extracts from defendant's constitution that the warranties recited in the application were intended to protect the defendant society only against misrepresentation of facts material to the risk assumed. Therefore we conclude that it cannot be held as a matter of law, that, though it may appear, in the light of the microscopic examination made by the physician, that the mother of deceased, at the time of her death, was afflicted with cancerous affection, the policy should be avoided because the applicant did not so state. See Life Insurance Co. v. Evert (writ denied May 31, 1916) 178 S. W. 643.

[4, 5] As to the contention urged by defendant in its pleading in the trial court that applicant had falsely stated that she had no sister dead, or had fraudulently concealed the fact that she had a sister dead at the time of her application, it will be noted, by reference to the schedule hereinabove inserted, that only two sets of spaces are provided for the answers with reference to applicant's sisters. On the line next to the bottom, she gives the information concerning her living sister. If the bottom line should be held to contain spaces for information concerning sisters dead, then the fact that she stated that she had one sister dead would have put the defendant society, through its medical examiner, on notice as to the cause of said deceased sister's death. It does not appear from the testimony of the medical examiner that any further question was asked her, nor is there any evidence to show that she knew the cause of her sister's death. Moreover, the evidence utterly fails to establish that her sister committed suicide. The landlady where she boarded, and the physician who attended her, both testified in the case, and both declined to state that she committed suicide. We are of the opinion that the evidence fails to show (1) that the applicant willfully concealed any knowledge in her possession with reference to her deceased sister; (2) or that if the real facts, as disclosed by the evidence, had been imparted to the examiner, they would have been material, and that the failure of the applicant to impart same in any way affected the risk assumed. In answer to question 3, part 2, in the application, which is as follows:

"Has any member of your family, or any near relative, ever committed, or attempted to commit suicide, or had consumption, raising of blood, rheumatism, insanity, cancer, gout, epilepsy, or other hereditary *disease*"

—the applicant answered, "No." For the answer or answers to this question a space perhaps less than two inches in length and a quarter of an inch in width is provided. It will be noted that the concluding phrase, "or other hereditary disease," specially directs the attention of the applicant to such hereditary diseases as may be included in this long list, and invites an affirmative or negative answer as to that particular kind of diseases. While we do not assume any special knowledge of or learning upon the various diseases to which human flesh is heir, yet it is a matter

of common knowledge that the medical profession at least are divided on the question as to whether a number of the diseases mentioned in this category are hereditary or not. Many reputable physicians and pathologists deny that consumption, rheumatism, gout, cancer, etc., are hereditary. If we should adopt the ejusdem generis rule of construction, it would probably limit the inquiry made to "hereditary diseases," and under this view, the applicant, though apparently unlearned in the science of diseases, would have had to decide, at the risk of invalidating her policy, which of the diseases mentioned were hereditary and which not. At least some of us believe that in the form the question is asked, the answer given is not shown, even by the testimony of Mrs. Henderson and Dr. Camp, to be untrue, and that by the rule of strict construction, which the appellee invokes herein, the answer given should be limited to those diseases upon whose hereditary character there is no room for division. But be this as it may, all of us are of the opinion that the question asked, like those under question 23, heretofore mentioned, call only for the family history upon the matters inquired about. As before stated, we are of the opinion that the evidence entirely fails to establish the suicidal death of the insured's sister, and fails to show that it was not the family history that the insured's mother died of typhoid fever. Both witnesses who testified to Mrs. Draper's having died of cancer stated that her final sickness was of short duration, one stating that it lasted a month, and the other six weeks. Dr. Chas. O. Hook, witness for plaintiff, testified, in part, as follows:

"A woman 47 years old suffering from cancer of the rectum and bowels could contract typhoid fever; a person may have any disease and contract typhoid fever; typhoid fever is almost universally infectious, once the germ is introduced, or it is so considered. A person having cancer of the rectum, if they were to contract or become infected with typhoid fever, would, of course, be more susceptible to greater suffering, or to it being more severe with them. Typhoid fever is an infectious disease, and an ulceration of the intestines is its principal manifestation; it is an inflammation of the small intestine."

[6] The burden of proof was on defendant to establish the alleged falsity of the answer of applicant as to the cause of her mother's death. Defendant's witness Dr. L. M. Camp testified:

"Mrs. Draper had an infection of the bowels or intestines, including the rectum. She had cancer of the rectum, with general breakdown of the system. She had an inflammation or ulceration of the rectum or bowels. I made a microscopical examination, and found her case to be malignant cancer. * * * You can determine positively whether any growth or inflammation is malignant or cancerous in its nature by a microscopical examination."

From the testimony of these two witnesses, both medical experts, it would seem that to the laity the symptoms in a malignant case of typhoid fever and in a cancerous affection of the bowels would be, in some respects, similar; and, as before stated, since it is not shown that in fact the insured had any other information as to the cause of her mother's death than that recited in her application, and since it is not shown that it was not part of the family history that her mother died of typhoid fever, we are not prepared to hold that the uncontradicted testimony establishes the falsity of such answers, or that the applicant should be charged with notice of the existence of a disease whose discovery was only effected by the physician in charge by the use of the miscroscope.

From what has been said, it follows that, in our opinion, the trial court erred in giving a peremptory instruction in favor of defendant. Hence appellant's second, third, fourth, and fifth assignments are sustained, and the judgment reversed, and the cause remanded.

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes