JAMES E. BLACKSTONE v. KANSAS CITY LIFE INSURANCE COMPANY.

No. 2411.    Decided March 24, 1915.

**1.—Life Insurance—Warranty—Statements of Birth and Residence.**

An applicant for insurance who was born and still lived on a farm in the country seven miles from the town of B. his postoffice and trading point, in response to printed questions in the blank form of application furnished by the insurer, calling for his residence: "Street———, City———, County———, State———," and for place of birth: "Town———, County———, State———," gave B. as his place of birth and residence. Held that this, though not literally true, was substantially so, when taken in connection with the questions answered, which would be naturally taken as requiring more than a mere statement of the county and State, and answered by the applicant in the manner he did. Though insured warranted the correctness of his answers, such inaccuracy did not defeat the policy.    (Pp. 104-106.)

**2.—Life Insurance—Warranty—Family History.**

In answer to questions calling for the name of his father, of his mother, brothers, number living, and number dead, sisters, number living, number dead, the applicant for insurance stated the brothers living as three, dead one, sisters living two, dead none. Of the children of the father and mother named there were four sons, one dead and three, including the applicant himself, living, and two daughters, both living; but his father had been three times married and applicant had five half-brothers living and one half-sister dead. Held that the answers, considering the form of the questions, were not materially incorrect. Applicant and his two living "brothers" were the brothers of the family asked about, the father and mother named, it being natural to use brothers in that connection in the sense of sons, and to disregard half-brothers and sisters, not children of the mother he was called on to name.    (Pp. 106, 107.)

**3.—Life Insurance—Warranty—Occupation—Intoxicating Liquors.**

A statement by an applicant for life insurance that he "was not then and had never been engaged in or connected with the manufacture or sale of malt or spirituous liquors" was not shown to have been untrue by the fact that when he was a child his father operated a still, to which he casually resorted and sometimes helped with the peaches and apples.    (Pp. 105, 107.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Upshur County.

Blackstone having sued and obtained judgment against the insurance company, which appealed, obtained writ of error upon the case having been reversed and rendered for appellant.

*J. S. Barnwell* and *Warren & Briggs,* for plaintiff in error.—In giving family history, that is, number of brothers and sisters, it was correct and proper for the applicant to include himself, there being nothing in the application forms to indicate a different answer was called for.

The insured could reasonably conclude, from the question as presented, that it was not intended to include brothers and sisters of the half blood. When the company propounds questions in such a way as to leave a doubt as to what was intended and the answer is true in one proper sense of the inquiry, it will not work a forfeiture that it is untrue or incomplete in another sense. Mutual Life Ins. Co. v. Ford, 130 S. W., 771.

The correctness of the answer should be construed according to the common and ordinary understanding of the meaning of the question, considering the matters then under inquiry. Mutual Life Ins. Co. v. Ford, 130 S. W., 771; Brown v. Palatine Ins. Co., 89 Texas, 595.

A minor of tender years who casually does a little work at his father's still is neither engaged in or connected with the manufacture of spirituous liquors. Mutual Life Ins. Co. v. Ford, 130 S. W., 769; Trenton v. N. A. Acc. Ins. Co., 89 S. W., 276, 99 S. W., 760; Mutual Life Ins. Co. v. Simpson, 88 Texas, 333; Daniels v. M. W. of A., 118 S. W., 211, 25 Cyc., 740; 16 Am. & Eng. Enc. of Law, 863.

*Locke & Locke,* for defendant in error.—The statements contained in an application for a life insurance policy, when warranted to be true, and constituting part of the contract, must be true, or the policy will be void or non-enforceable. Hutchison v. Hartford L. & A. Ins. Co., 39 S. W., 325; Kansas Mut. L. Ins. Co. v. Pinson, 94 Texas, 553; Flippen v. State Life Ins. Co., 30 Texas Civ. App., 362, 70 S. W., 787; Brock v. United Moderns, 36 Texas Civ. App., 12, 81 S. W., 340; Dwight v. Germania Life Ins. Co., 103 N. Y., 341; Gross v. Colonial Assur. Co., 121 S. W., 517; National Union Fire Ins. Co. v. Dorroh, 133 S. W., 475.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The suit was one by the plaintiff in error upon two policies of life insurance, issued June 23, 1909, by the defendant in error, upon the life of his son, Harvey A. Blackstone. In the trial court the case was submitted to a jury on special issues, resulting in a verdict and judgment for the plaintiff in the sum of $6300. The judgment was reversed by the honorable Court of Civil Appeals upon the ground that certain statements made by the insured in his application for the insurance, which amounted to warranties, were untrue, and judgment was rendered for the defendant in error.

Each of the policies contained a clause declaring it to be incon-

testible after one year from the date of issue. The Act of 1903 (arts. 4947-4951, Rev. Stats., 1911), providing that the falsity of statements made in the application for insurance shall constitute no defense to a suit to recover upon the policy, unless the misrepresentation was in relation to a matter material to the risk· or contributing to the contingency or event rendering the policy due and payable, has, therefore, no application; and the case turns upon the question whether the statements in question are to be regarded as untrue. An issue was made by the defendant in respect to a fraudulent procurement of the policies; but it was one purely of fact, and is, therefore, settled by the verdict.

The statements referred to involve the answers made by Harvey A. Blackstone to questions contained in the application in respect to: (1) His place of birth and residence. (2) The number of his brothers and sisters, living and dead. And (3) whether he was then or had ever been engaged in or connected with the manufacture or sale of malt or spirituous liquors. The questions to which the answers related were a part of a printed form in the application. The question in respect to residence, in Part 1 of the application, was propounded for answer as to "street," "city," "county" and "State," a blank space being left after each of these respective headings for the insertion of the answer. Blackstone's answer to the question was: "City, *Big Sandy;* county, *Upshur;* State, *Tex.*" In Part 2 of the application he was asked to give his "residence," and his answer was, "Big Sandy, Texas."

In respect to the place of birth the form was thus printed: "Give place of birth. Town . . . . . . . . . , County, . . . . . . . . . State . . . . . . . . ." The answer of Blackstone was made so as to state that he was born in the town of Big Sandy, Upshur County, Texas. He was in fact born on the farm of his father, situated about seven miles from Big Sandy in Upshur County, and had continuously resided there to the date of his death, August 5, 1909; Big Sandy being the postoffice address of his father and himself, and their trading point.

The form in the application calling for a statement of family history as to brothers and sisters, was in part as follows:

"Give full family history as accurately as possible. . . .

"Family History.

"Father, name. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Mother, name. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Brothers, number living, . . . . . . ; number dead. . . . . . .
"Sisters, number living, . . . . . . ; number dead, . . . . . ."

Blackstone's answer was, "brothers living, three; dead, one"; "sisters living, two; dead, none." He had at the time two full brothers living. He had also two full sisters, both living. His father was married three times, Harvey A. Blackstone being a child of the second marriage. At the time of making the answer he had five half brothers living; and one half sister was dead.

The further statement made by him in the application was, that

"he was not then and had never been engaged in or connected with the manufacture or sale of malt or spirituous liquors." It appears that his father at one time maintained a still, and the testimony was that when a small boy Harvey Blackstone was, at times, about the still, and "sometimes worked there as a hand; that he did not know anything about making whisky, but helped with the peaches and apples."

When the form of the questions and the construction of which they admitted, are considered, it seems to us that it requires a very technical construction to say that any of these statements was untrue. In Part 1 of the blank printed form, prepared by the insurance company, and to be, therefore, most favorably construed for the beneficiary in the policy, the applicant was required to state his place of residence. The question called for a statement, not only as to the county and State, but the city and street as well. No provision was made for an answer stating a rural residence, except by merely giving the name of the county and State, or by the addition of qualifying words, the use of which the form does not appear to have contemplated. Anyone residing in the country, endeavoring to truly answer the question, might reasonably conclude from its form that a more definite statement of his residence was expected than merely the name of the county and State in which he lived; and the presence in the printed form of the heading, "City," with the blank space following for the insertion of an answer, might reasonably suggest to him the advisability of stating the name of the city or town nearest to which he lived and constituting his address, and prompt him to do so under an honest belief that it was desired. The answer given was not technically true; but neither was the form of the question technically accurate in its application to one not having a city residence, and might easily mislead such a person in his effort to answer it. It may be said that the form in which the question was propounded invited the form in which the answer was given. It was at least open to the construction of inviting such an answer by one not having a city residence. In the light of the question, therefore, the answer is not, in our opinion, to be regarded as substantially untrue, though not literally accurate.

This form was plainly not adapted to a literally exact answer by one having only a rural residence. Its heading, arrangement, and the size of the blank spaces left for the insertion of answers indicate that its use by such an applicant was not in mind when it was framed. Room was not afforded in the spaces left blank for a detailed statement of the exact location of a rural residence, such as would be required in order to be literally true and at the same time technically accurate. The form carries to our minds no suggestion of the necessity of such an answer. If the company desired an answer of that precision, it ought to have provided a form which indicated such a requirement, and admitted of such an answer being conveniently written. Where it is apparent, as it is here, that the form of an answer was influenced by the form of the question propounded, and, under an admissible construction of the question, was not substantially untrue, it is difficult

to impart to it the character of a positive misrepresentation; and we do not believe the law requires that it should be given any such effect.

Blackstone's answer concerning his place of birth was made in the same way and upon practically the same character of form. It should be regarded, we think, as substantially true in the light of the form in which the question was propounded.

In Part 2 of the application a second statement of "residence" was required. Here the question was not put in the same form as in Part 1 of the application, above discussed; but in the printed form only the heading, "Residence," appeared, followed by a blank space for the answer. In this space the answer was inserted "Big Sandy, Texas." We think this question was entitled to be construed by the applicant with the question asked in the other part of the application on the same subject, and as indicating that an answer in the same form was desired.

The case of Hutchison v. Hartford L. & Ann. Ins. Co., 39 S. W., 325, in which a writ of error was denied by this court, is cited in support of the contention that these answers should be regarded as avoiding the policy. There the assured stated in his application for insurance that his place of residence was Kyle, Hays' County, Texas, when he in fact resided in the country, about twelve miles from Kyle. The Court of Civil Appeals for the Third District held that because his statement was not literally true a breach of the warranty in the policy resulted. It does not appear from the record of the case in this court that the answer was there made in response to a question in the form of that contained in Part 1 of this application. If so, it was a feature of the case not noticed in the opinion, and not presented to this court in the petition for writ of error. But it should not be overlooked here, for it is apparent to us that it was purely the form of these questions which determined the form of the answers given; and it is equally evident that the answers are in the form that any honest applicant, desiring to state only the truth, might conclude was intended by the questions propounded. However considered, that decision is an extreme one, and it is doubtful whether it should ever have been approved. Under its reasoning, in a similar case one living within the general confines of a city, in what was commonly regarded as the city, but immediately without the corporate line, would be equally guilty of a misrepresentation if he stated that the city was his place of residence, on the ground that the statement was not literally true.

It is urged by the defendant in error that Blackstone's answers in the application in relation to his family history were untrue for the reason that he had at the time living two full brothers and five half brothers, and one half sister dead; whereas his answer was, "brothers living, three; sisters living, two; none dead." The question was, in our opinion, open to the construction which Blackstone doubtless placed upon it in making his answer, and under that construction the answer was accurate. He was asked to give his family history; first, his father's name, then his mother's name, and then the number of brothers

and sisters living and dead. It is a common form of expression, though perhaps not technically correct, to speak of the number of brothers or sisters in a family, when the number of sons or daughters is intended; and Blackstone, in making answer to the question, may reasonably have concluded that it called for the number of brothers in the family, living, including himself. There were three of the brothers living, including himself, as his answer stated.

The question in respect to both brothers and sisters was likewise open to the construction that only those of the full blood were meant, and his answers are not to be regarded as untrue because they failed to embrace those of the half blood. If he had included the latter, his answers would have been as fully subject to cavil and the charge of technical inaccuracy as the replies actually made; for then it might have been said that the terms "brothers" and "sisters" did not mean half brothers and half sisters, since it is not necessarily true that the terms at all times ·and under all circumstances include those of the half blood.

Nor was the answer of the assured "that he was not then and had never been engaged in or connected with the manufacture or sale of malt or spirituous liquors," shown to have been untrue. We have already repeated the substance of the evidence upon this feature of the case. It is, in our opinion, idle to say that one casually around his father's still while a mere child, as a child might resort to his parent's place of business, though sometimes working in the capacity of a helper, in necessarily a minor way,—in this case "helping with the peaches and apples,"—is proven to have been at one time "engaged in" or "connected with" the manufacture of spirituous liquors.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*