GUARANTEE LIFE INS. CO. v. EVERT. †
(No. 8167.)

(Court of Civil Appeals of Texas. Ft. Worth. April 24, 1915. On Motion for Rehearing, June 5, 1915.)

1. INSURANCE ☞665 — LIFE POLICIES — ACTIONS—EVIDENCE.

In an action on a life policy, evidence *held* insufficient to show that insured knowingly made false answers to questions in the application, or that at that time he realized he was affected with cancer of the stomach.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. ☞665.]

2. INSURANCE ☞665 — LIFE POLICIES — ACTIONS—EVIDENCE.

Evidence, in an action on a life policy, *held* to show that false answers made in the application were not material to the risk and did not influence the issuance of the policy, and hence, under the direct provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 4947, the falsity would not avoid the policy.

[Ed. Note.—For other cases, see Insurance. Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. ☞665.]

3. INSURANCE ☞390 — LIFE POLICIES — ACTIONS—DEFENSES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 4948, declares that, in actions upon policies, no defense based upon misrepresentations made in the application shall be allowed, unless the insurer shall show on trial that, within a reasonable time after discovering the falsity of the misrepresentations, it gave notice that it refused to be bound by the policy, and that 90 days shall be considered a reasonable time. The proofs of death which showed the falsity

of the representations made by insured were received by the insurer about June 27, 1913. Suit on the policy was filed September 17th. The first answer presenting the defenses of misrepresentations was filed November 28th. *Held*, that it came too late, and the defenses could not be urged.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1037, 1038; Dec. Dig. ☞390.]

On Motion for Rehearing.

4. INSURANCE ☞255 — LIFE POLICIES — MISREPRESENTATIONS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 4951, declared that the provisions of the foregoing articles shall not apply to life policies in which there is a clause making such policy indisputable after two years or less, provided premiums are paid. Article 4947, which preceded this, declared that misrepresentations in the application should not affect the validity of the policy, unless material, while article 4948 prohibited such defense, unless the insurer, within a reasonable time after discovering the misrepresentation, refused payment on that ground. Acts 31st Leg. c. 108, § 22, by which the insurance law was amended, provides that no policy of life insurance shall be issued after December 31, 1909, without a provision that the policy and application shall constitute the entire contract, and that the policy after two years shall be incontestable, save for nonpayment of premiums. This section, which appears as article 4741, omits the expression "after December 31, 1909." Section 68 of Acts of 1909, which appears as article 4959, declares that no recovery upon any life policy shall be defeated because of any misrepresentation in the application which is of an immaterial fact and does not affect the risk assumed. *Held* that notwithstanding article 4951 the amending act of 1909 applied to policies issued thereafter, and, unless the misrepresentations were material, they would not avoid the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 548; Dec. Dig. ☞255.]

5. INSURANCE ☞265—LIFE POLICIES—CONSTRUCTION—WARRANTY.

A life policy contained a provision declaring that all statements by the insured should, in the absence of fraud, be deemed representations and not warranties. A stipulation and agreement contained in the application recited that each and every statement, answer, and representation made by the insured was material to the application, and was warranted to be true, and that, if any be untrue, the policy should be void, except as otherwise provided in the policy. *Held* that, while no particular form of words is necessary to constitute a warranty, yet, in view of the conflict between the policy and the application, representations as to immaterial matters would not be construed as warranties, and their falsity would not avoid the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 560; Dec. Dig. ☞265.]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by Henry B. Evert against the Guarantee Life Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Lane, Wolters & Storey, of Houston, and R. E. Carswell, of Decatur, for appellant. McMurray & Gettys, of Decatur, for appellee.

DUNKLIN, J. The Guarantee Life Insurance Company issued to William H. Mat-

thews a life insurance policy, by the terms of which Henry B. Evert was named as beneficiary. The insured having died, Evert instituted this suit against the company to collect the policy, and, from a judgment in his favor, the defendant has appealed.

The trial was by the court without the aid of a jury, and the following are the trial judge's findings of fact and conclusions of law, omitting the unnecessary repetition of such expressions as "I find that," with which nearly every sentence in the findings of fact begins:

"Findings of Fact.

"(1) The policy of insurance described in plaintiff's petition was issued by the defendant company on July 31, 1912, insuring the life of William H. Matthews in the sum of $1,000, payable to the plaintiff as the beneficiary.

"(2) The insured William H. Matthews died on June 11, 1913, having up to that time paid all premiums on said policy that had accrued or become due thereon.

"(3) The policy of insurance in question was procured and taken out by the insured in good faith, at a time when he believed himself to be and in fact was in a state of good health.

"(4) The insured, in making the application for said insurance, answered and stated truthfully all questions and matters that were material to the risk, and all questions or matters not fully or truthfully answered or stated by him in said application were not material to the risk, and did not influence the issuance of the policy. The answers and statements made by insured therein, to the effect that he had resided at Decatur, route No. 5, all his life, and that he had consulted no physician, were the only answers or statements of said insured that were in any respect not full or true. Insured was not then and had not been afflicted with any disease of a serious nature or of such nature as to affect the desirability of said Matthews as a proper and suitable risk for life insurance; and if all the true facts had been fully and truthfully stated by the insured in said application, and a full investigation of such facts had been made by the insurer, nothing would have been disclosed affecting the suitability of said Matthews as an insurable risk. If the true facts relative to the consultation of a physician by said Matthews and his taking treatment as a result of such consultation had been thus fully disclosed, and the truth stated by all those knowing of such consultations, treatments, and physical condition of the said Matthews, for which said consultations and treatments were had, nothing would have been shown in the way of a disease of a serious nature, or of such nature as to be material to the risk; said consultations and treatments relating only to temporary ills common to humanity, and having no serious or permanent effect. If said insured had answered fully as to where he had formerly resided, and this had been followed by investigation by defendant, nothing would have been disclosed affecting the desirability of said Matthews as an applicant for insurance.

"(5) The said Matthews had not been affected with any of the diseases mentioned in said application, and he was at the time of the making of said application and the issuance of said policy, and was usually, in good health, and believed himself to be, and in fact was, physically sound.

"(6) The defendant is a life insurance company, within the meaning of article 4746, Revised Statutes 1911. It failed to pay the loss or amount due the beneficiary on said policy within 30 days after demand was made therefor. One hundred and fifty dollars is a reasonable

attorney's fee for prosecuting this suit on behalf of said beneficiary for the recovery and collection of said loss.

## "Conclusions of Law.

"It appearing to the court that no misrepresentations had been made, either material to the risk or actually contributing to the contingency or event on which said policy became due and payable, I conclude that the plaintiff is entitled to recover of the defendant the $1,000 provided for in said policy, and the defendant company having failed to pay said loss within 30 days, as required by article 4746, Revised Statutes 1911, I further conclude that plaintiff is entitled to recover the 12 per cent. damages on the amount of said loss, as provided for in said statute, together with $150, as a reasonable attorney's fee for the prosecution of this suit for the collection of said loss, making a total recovery of $1,270, for which amount judgment is rendered herein in favor of plaintiff against the defendant."

The application for the policy contained the following stipulation:

"I, the undersigned, do hereby certify that I am the applicant for life insurance mentioned and described in the foregoing statements, representations, questions, and answers; that I have read and fully understand each and every of said statements, representations, questions, and answers; that said answers, statements, and representations, and each and all of them, as above written, are the answers, statements, and representations given and made by me, and were written by me or under my direction and in my presence. And I do further declare and agree that each and every of said answers, statements, and representations made by me as aforesaid is and are material to this application, and any action taken thereon by said the Guarantee Life Insurance Company, and I warrant and declare each and every of said answers, statements, and representations to be full, complete, and true, and that if either or any of said answers, statements, or representations be not full and complete, or if either or any of them be untrue in any respect, then and in such case any policy issued thereon shall be null and void from the beginning, except as shall be otherwise expressly provided in this policy."

The policy contained the following clause:

"This policy contains the entire contract between the parties, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statements shall be used as a defense to a claim under this policy, unless it be contained in a written application, and a copy of such application shall be indorsed upon or attached to this policy when issued. This policy shall not take effect until the first premium is paid and the policy actually delivered during the life and good health of the insured."

Attached to and made a part of the policy was the application therefor which was dated July 23, 1912, and the only defense made to the suit was that the statements made by the insured in the application relative to his health were false and fraudulent, and material to the risk, and that the defendant was induced to issue the policy upon the belief that those statements were true.

The assignments of error presented here are to adverse findings by the court upon the defenses so made. Among others, the following questions and answers appear in the application:

"Q. Are you now and usually in good health, and do you believe yourself to be physically sound? A. Yes. Q. Have you ever been afflicted with any of the following named diseases or conditions (answer 'Yes' or 'No' to each): Diseases of the stomach? A. No. Cancer or tumor? A. No."

[1] Appellant insists that the evidence shows conclusively that the answers of Matthews to those questions were knowingly untrue; that he was at the time of his application, and at the time the policy was delivered, affected with cancer of the stomach; and upon those contentions bases an assignment of error to the fifth paragraph of the court's findings of fact.

Dr. C. J. Parris attended the insured during his last illness and made proofs of his death. He testified that he treated him during the years 1911–12, and up to his death in 1913. He identified a prescription he gave insured, which was dated September 30, 1911, intended "for a general alterative and tonic effect," also one dated January 27, 1912, for liver, stomach, and bowels. He also gave him a prescription June 27, 1912. Continuing, he testified:

"I think the next time I treated him was some time in October, 1912, when there was some trouble with his liver. Along about January or February, 1913, I treated him for possibly a week or 10 days and made 3 visits during 24 hours while he was sick that time. Stomach trouble was what was the matter with him at this time. He had cancer of the stomach, which produced his death on June 11, 1913. * * * He was attending to his business during all this time. He was running a store at Sycamore out there, and was staying and working there in and about the store. It was not until later that I found out that he had a malignant trouble. I think I first began to suspect it some time probably in June, 1912, but did not know there was a malignant trouble until about the close of the year. * * * It was some time back toward the first part of 1912, probably about June, that I began to suspect any malignant trouble, but I was not certain of that until later in the year."

The proofs of death by this witness, which proofs were sent in to the company prior to this suit, after stating that the insured died of cancer of the stomach, further stated that the first symptom of the disease "appeared about one year ago"; this proof being dated June 27, 1913.

Dr. J. W. Scott, medical director for the defendant, residing at Houston, testified as follows:

"I am familiar with the incipient growth and duration of cancer of the stomach. Ordinarily a person afflicted with cancer of the stomach will live about $1\frac{1}{2}$ years after such cancer would be discovered by a diagnosis. I hardly see how it could have been possible for Matthews to have been in good health at the time he made the application, because the disease would have manifested its symptoms, or caused some stomach trouble at least a year before his death. There are no objective symptoms in cancer of the stomach in its incipiency. It would have been too well developed before these objective symptoms would manifest themselves."

Opposed to that testimony was the testimony of the plaintiff, Evert, of Mrs. Lula Matthews, wife of the insured, Joe McNeeley, and Joe Boydstun, the last two witnesses being neighbors and acquaintances of the in-

sured for several years, also the testimony of L. L. Mann, the defendant's agent who solicited and procured the insured to make application for the policy in question. Practically all of those witnesses testified, in substance, that insured was a strong, healthy man, weighing about 175 pounds, doing hard work every day, and apparently in good health and sound physical condition throughout the year of 1912, with the exception of slight attacks of biliousness or bad cold, which did not interfere with his work, and which was always relieved by taking medicine therefor. Furthermore, plaintiff introduced in evidence the written statements of Dr. T. A. Moore, the examining physician who examined the insured for the defendant at the time he made application for the policy, which statements were attached to the application for insurance and considered by Dr. Scott in passing upon and approving the application. It appears from this report that Dr. Moore made a careful and critical examination of the insured and gave answers to numerous questions propounded to him. One of the questions so propounded reads: "Do you find the functions of the stomach and other abdominal organs to be normal? (Abdomen must be carefully palpated before answering this question.)" To which Dr. Moore answered, "Yes."

It will be observed that Dr. Parris did not express a definite opinion that the insured was afflicted with cancer of the stomach in June, 1912; the extent of such opinion being that he began to suspect a malignant trouble about that time. But the force of that testimony is weakened to some extent, at least, by the fact that he did not begin to treat him for such trouble until some time about the close of the year 1912. The opinion expressed by Dr. Scott, the medical director of the defendant company, that cancer of the stomach with which insured died would have manifested symptoms or caused some stomach trouble at least a year before his death, and that ordinarily a person so afflicted would live about a year and a half after the disease would be discovered by a diagnosis, were expert opinions only, and would not necessarily be controlling when opposed to the testimony offered by the plaintiff and referred to above. Accordingly, appellant's first assignment of error is overruled.

[2] By different assignments appellant attacks, as unsupported by any evidence and contrary to the undisputed evidence, the facts recited in the fourth paragraph of the findings of fact, and reading as follows:

"The insured, in making application for insurance, answered and stated truthfully all questions and matters that were material to the risk, and that all questions or matters not fully or truthfully answered or stated by him in said application were not material to the risk and did not influence the issuance of the policy."

In addition to the questions and answers contained in the application for insurance and set out above, the insured further stated that he had not been afflicted with any of the following named diseases or conditions, to wit: Abscess, disease of the bowels, disease of heart, disease of the kidneys, disease of the liver, disease of the stomach. And the application also contained the further questions and answers as follows:

"Q. What physician did you last consult? A. None. Q. Present residence? A. Decatur, route 5. Q. How long have you lived there? A. All life."

Appellant insists that the foregoing statements that he had not consulted a physician, that he had never been affected with any disease of the stomach or bowels, that he had resided at Decatur, route 5, all his life, that on July 25, 1912, he was then and usually in good health and believed himself to be physically sound, were each shown by undisputed evidence to be false, and that each influenced the company in accepting the risk. In addition to the testimony of Dr. Parris and Dr. Scott already referred to, the record shows further testimony as follows: Proof of death by Dr. Parris, which was submitted to the defendant, was introduced in evidence, containing the statement that he (Dr. Parris) had been the medical attendant or advisor of the deceased about two years, and further that "Mr. Matthews was not aware of his condition until some three months before his death," also the testimony of Dr. Inge, who had resided in Denton and practiced medicine in Denton county, Tex., for 39 years.

Dr. Inge testified that the insured formerly lived in Denton county, part of the time in the town of Denton, and a part of the time in the southwest portion of the county; that witness had attended the insured professionally January 5, and January 11, 1879, and also on July 13, 1902. At the time of such visits, the insured was living about 12 or 13 miles southwest of Denton. This witness further testified as follows:

"I prescribed medicine for him, but all I remember in reference to the remedies is that I prescribed aliments and tonics. It has been such a long period of time, and I have no notes of his case or condition, and do not remember definitely as to the diagnosis. I only remember that he suffered with some stomach, liver, or intestinal trouble, resulting in a dropsical effusion. He left the country soon after, and I lost sight of the case. He was in bad health, and remember him as being pale, and that he was not vigorous during the time I knew him. * * * It is a fact that the last time I prescribed for W. H. Matthews was about 13 years ago, and I have not seen him since that time. It is also a fact that I have not known anything of the condition of health of W. H. Matthews for the past 13 years."

Appellant also introduced the further testimony of Dr. Scott, the medical director of the defendant company, as follows:

"I am the medical director of the Guarantee Life Insurance Company of Houston, Tex. I have been its medical director since its organization about 7 years ago, and was the medical director of said Guarantee Life Insurance Company on the 31st day of July, 1912. As medical director I have the general supervision of the medical department of the company in approv-

ing the appointment of medical examiners and passing upon applications for insurance and advising upon the desirability of the risks. * * * The application of W. H. Matthews was presented to me for approval or disapproval, and I approved the same. I approved it upon the statements made by the applicant and upon the examination made by the doctor contained in said application. It was necessary to have my approval before a policy would have been issued to Mr. Matthews. When I received Mr. Matthews' application, I read it over and considered it carefully and approved the same because, in my judgment, from the answers contained in the application, I considered it a good risk. If the application had disclosed that W. H. Matthews had consulted other physicians prior to the time he made application, I would have investigated his troubles and passed on the case accordingly. If I had found from such investigation, or if the application had shown, that W. H. Matthews had within a year prior to the time of making the application had stomach trouble or kindred diseases, I would not have approved the application for insurance on account of his age; he being then 60 years old. A man 60 years old, in order to obtain my approval for insurance, must have a clear record, so far as his personal health goes. If the application had disclosed that, shortly prior to the date thereof, the said W. H. Matthews had been affected with disease of the bowels, disease of the stomach, rheumatism, or any kindred diseases, I would not have approved it, for the reasons stated. * * * The answers which I claim misled me into approving the policy, and which I claim were false, are as follows: He gave a negative answer to the question, 'Have you ever had any disease of the stomach?' He also gave a negative answer to the question, 'Have you ever had any disease of the bowels?' He answered 'None' to question, 'What physician did you last consult?' "

Mr. Mann, after testifying that he wrote the applicant's answers to the questions contained in the application, testified further as follows:

"I wrote the answers myself to the questions: 'Q. Present residence? A. Decatur, route 5. Q. How long have you lived there? A. All life.' I knew that he had not lived there on route 5 out of Decatur in Wise county all of his life. I knew just how long he had lived there, and I knew he had lived in Archer county and in Denton county prior to his coming to this county, but it was my understanding that what the defendant company wanted to know in reply to those questions was the general locality of the state in which the applicant had lived. That being my idea about it, I told Mr. Matthews that was what was wanted, and, knowing the facts about his residence as I did, I wrote down the answer to the question that way. Mr. Matthews was at that time apparently in the best of health. I had seen him frequently ever since he first moved here from Archer county, covering a period of probably two years up to that time, and he always had the appearance to me of being a man in the very best of health. He was a large, heavy man, robust in appearance, and was always doing his work. * * * I had been in the business of soliciting insurance for several years, at the time I took Mr. Matthews' application, to observe the physical condition and health of applicants. I observed Mr. Matthews' condition and health and believed it to be good."

By article 4947, Vernon's Sayles' Tex. Civ. Stat., it is provided that:

"Any provision in any contract or policy of insurance issued or contracted for in this state, which provides that the answers or statements made in the application for such contract, or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon a trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

The fact that Dr. Parris and Dr. Inge had both been consulted by the insured a number of times prior to the date of the application seems undisputed. It is also undisputed that the applicant had not lived on rural route 5 near Decatur all his life, and that he had had some stomach trouble, at least of a minor character. But, in view of the testimony offered by the plaintiff and noted above in rebuttal of that offered by the defendant, it cannot be said that the false statements of the applicant relative thereto necessarily were material to the risk of the issuance of the policy. On the contrary, we are of the opinion that there was evidence sufficient to support all the findings of fact shown in the fourth paragraph of the findings shown in the record. Am. Nat. Ins. Co. v. Fawcett (Civ. App.) 162 S. W. 10; Roedel v. John Hancock Mut. Life Ins Co., 176 Mo. App. 584, 160 S. W. 45.

[3] Article 4948, Vernon's Sayles' Tex. Civ. Stat., reads:

"In all suits brought upon insurance contracts or policies hereafter issued or contracted for in this state, no defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid, unless the defendant shall show on the trial that, within a reasonable time after discovering the falsity of the misrepresentations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, that it refused to be bound by the contract or policy: Provided, that ninety days shall be a reasonable time: Provided, also, that this article shall not be construed as to render available as a defense any immaterial misrepresentation, nor to in any wise modify or affect article 3096aa."

By this statute the burden of showing such notice is placed upon the defendant. Appellee invokes the provisions of this statute, which, under the record in this case, he insists furnishes a complete answer to all of appellant's assignments. The statement of facts shows that the proof of death of the insured signed by Dr. Parris was furnished to defendant company about June 27, 1913, and the statement of facts fails to show that the defendant company at any time gave notice to the plaintiff that it refused to be bound by the contract on account of the alleged falsity of statements contained in the application for insurance. But the record shows that the suit was filed September 17, 1913. The transcript further shows that defendant's first amended original answer, presenting the defenses discussed, was filed November 28, 1913. The transcript does not show when the original answer was filed nor its contents. Ninety days from June 27,

1913, the date of proof of death by Dr. Parris would extend to September 27, 1913. In the proof of death were statements by Dr. Parris that he had been the medical attendant of the insured about 2 years; that insured had died of cancer of the stomach; and that the first symptom of the disease had appeared about 1 year prior to the date of the proof. And, as noted already, Dr. Scott testified, in effect, that in his opinion insured had been afflicted with cancer of the stomach for about 1½ years prior to his death. Under the circumstances related, it would seem that, at all events, the defenses based upon the alleged falsity of statements made by Matthews in his application for insurance would fail, irrespective of the merits of any of the assignments of error presented by appellant and discussed above.

For the reasons noted, the judgment is affirmed.

### On Motion for Rehearing.

[4] As will be noted in our opinion on original hearing, we cited in support of the judgment in favor of the insured articles 4947 and 4948 of Vernon's Sayles' Texas Civil Statutes, which were quoted. Our attention is now called to the stipulation contained in the policy as follows:

"This policy is incontestable after one year from its date except for nonpayment of premiums."

And also to article 4951 of Vernon's Sayles' Texas Civil Statutes, which ·contains the following:

"The provisions of the foregoing articles shall not apply to policies of life insurance in which there is a clause making such policy indisputable after two years or less, provided premiums are duly paid."

This provision was not cited in the briefs and, upon a former consideration of the assignments, escaped our notice. Appellant also cites the recent decision by our Supreme Court in Blackstone v. Kansas City Life Insurance Co., 174 S. W. 821. In that case it was held that articles 4947 to 4951 of our statutes had no application to the two policies involved in that suit, both of which were issued June 23, 1909. The applications by the insured for those policies contained provisions warranting the truth of statements made by him in answer to questions propounded, and upon which statements the policies were issued. The Court of Appeals held that certain statements by the insured contained in the application were untrue; and that the policies did not support a recovery by reason of such warranties. The Supreme Court concurred with the Court of Appeals in holding that such statements should be held to be warranties, and that plaintiff's right to recover should be tested accordingly, but further held that the statements claimed to be untrue were not untrue when strictly construed, and upon that holding affirmed the judgment of the trial court

in favor of the insured against the insurance company.

By the acts of 1909 our insurance law was amended. See Acts 1909, c. 108, p. 192. Articles 4741 and 4959, 3 Vernon's Sayles' Tex. Civil Statutes, are two sections of that act; the former being section 22 and the latter section 68. By article 4741 it is provided that:

"No policy of life insurance company shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, unless the same shall contain provisions substantially as follows. * * *

"3. A provision that the policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums; and which provision may or may not, at the option of the company, contain an exception for violations of the conditions of the policy relating to naval and military services in time of war.

"4. A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

Article 4959 reads:

"No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed."

The beginning portion of section 22 of the act of 1909 reads:

"No policy of life insurance shall be issued or delivered *after December 31st, 1909*," etc.

Article 4741 omits the words "after December 31st, 1909." Doubtless the omission of those words in Revised Statutes 1911 was by reason of the fact that the date thus omitted had already passed at the time of the adoption of the codification of the statutes in the year 1911. The same words are contained in section 23, which are likewise omitted in article 4742 of our present statutes, doubtless for the same reason. The regular session of the Thirty-First Legislature, at which the acts of 1909 was passed, adjourned March 13, 1909, and that act took effect 90 days after that date, which would be June 13, 1909. As noted already, the policies in the case of Blackstone v. Kansas City Life Ins. Co., supra, were issued June 23, 1909. Hence they were not required to contain the provisions of article 4741. The provision in the act of 1909 that the requirements of article 4741 should apply only to policies issued after December 31, 1909, clearly indicates an intention of the Legislature that the articles of the statutes (4947 to 4951) which were passed in the year 1903 should be applicable to policies issued prior to December 31, 1909, and while those statutes were in force; but that the provisions of the act of 1909 should have a controlling effect upon all policies issued after that date.

[5] The policy in controversy contains the following provision:

"This policy contains the entire contract between the parties and all statements made by

the insured shall, in the absence of fraud, be deemed representations and not warranties. * * * "

Aside from the provisions of article 4959, the stipulation in the policy just quoted shows a specific agreement by the company that the statements by the insured should not be deemed warranties, but should be deemed representations only. That provision is clearly in conflict with the further stipulation and agreement contained in the application for the policy signed by the insured, attached to the policy, and which is invoked by the appellant here, reading:

"And I do further declare and agree that each and every of said answers, statements and representations made by me as aforesaid is and are material to this application and any action taken thereon by said the Guarantee Life Insurance Company, and I warrant and declare each and every of said answers, statements and representations to be full, complete and true; and that if either or any of said statements, answers or representations be not full and complete, or if either or any of them be untrue in any respect, then and in such case any policy issued thereon shall be null and void from the beginning, except as shall be otherwise expressly provided in this policy, * * * and I hereby further agree that this application and everything therein contained shall be and constitute a part of any policy issued thereupon."

It is too well settled to need the citation of authorities that independent of articles 4741 and 4959, if a contract of insurance is ambiguous, that construction will be adopted which is most favorable to the insured, and, even though the application for the policy in the present suit should be considered as a part of the contract of insurance, the contractual terms thereof at variance with those of the policy, to the effect that the statements made by the insured shall be deemed representations and not warranties, would be rejected under that rule. Reppond v. Nat. Life Ins. Co., 100 Tex. 519, 101 S. W. 786, 15 Ann. Cas. 618, 11 L. R. A. (N. S.) 981; Del. Ins. Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867; 25 Cyc. 805.

The act of 1909 contains no limitation of articles 4741 and 4959, quoted above. Those articles apply to all policies issued after December 31, 1909, including the one in controversy in this suit, and such policies are not affected by the provisions in article 4951, quoted above.

Appellant has cited Phœnix Mut. Life Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 646, and Jeffries v. Economical Mut. Life Ins. Co., 89 U. S. (22 Wall.) 47, 22 L. Ed. 836, holding that an agreement between the insurer and insured that statements made by the insured for the purpose of procuring the policy are material to the risk is enforceable, and upon those authorities insists that effect should be given stipulation contained in the application for insurance, reading:

"And I do further declare and agree that each and every of said answers, statements and representations made by me as aforesaid is and are material to this application and any action taken thereon by said the Guarantee Life Insurance Company."

In other words, appellant insists, in effect, that, in view of that stipulation, that insured was in no position to claim that the alleged misrepresentations were immaterial to the risk assumed by the company. "No technical words or form of expression are necessary to constitute a warranty." Banking Co. v. Stone, 49 Tex. 4. The stipulation last quoted, especially in connection with the further agreement that, if any of the representations be untrue, then the policy shall be null and void, constituted a warranty of the truth of the representations, independent of the further more specific warranty of their truth in the use of the word "warrant" in connection therewith. Bills v. Hibernia Ins. Co., 87 Tex. 547, 29 S. W. 1063, 29 L. R. A. (N. S.) 706, 47 Am. St. Rep. 121; Washington Fire Ins. Co. v. Cobb (Civ. App.) 163 S. W. 608. To give effect to that stipulation in the application would be to ignore and override the stipulation in the policy favorable to the insured, in effect, that all such statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, which would be contrary to the rule of construction of contracts of insurance and contrary also to the plain provisions of articles 4741 and 4959. Furthermore, it will be noted that the entire agreement contained in the application is qualified by its concluding language: "Except as shall be otherwise provided in this policy."

The motion for rehearing is overruled.