ÆTNA LIFE INS. CO. v. KING.   (No. 884.)*

(Court of Civil Appeals of Texas. El Paso. Jan. 9, 1919. On Rehearing, Jan. 30, 1919.)

1. INSURANCE ☞300—DECLARATIONS—SHORT FORM APPLICATION.

A short form application for additional insurance *held* susceptible of meaning only that declarations, concerning applications for insurance in other companies, in the original application, were true when made.

2. INSURANCE ☞264(2)—REPRESENTATIONS—CONSTRUCTION.

Doubt as to meaning of statements in a short form of application, which was presented to insured filled out as signed, will be resolved in favor of enforcement of the policy.

3. INSURANCE ☞255—MISREPRESENTATIONS—WHEN MATERIAL.

A misrepresentation in an application for life insurance is material, under Rev. St. 1911, art. 4741, when knowledge of the truth by the insurer might reasonably have caused it to refuse to issue the policy.

4. INSURANCE ☞668(6) — MISREPRESENTATIONS — DECLARATIONS IN APPLICATION—QUESTIONS FOR JURY.

In action on life policy, whether declaration in application as to cause of death of insured's brother and as to insured's use of alcoholic or malt liquors was material, within meaning of Rev. St. 1911, art. 4741, *held* for jury.

5. APPEAL AND ERROR ☞688(2) — MATTERS REVIEWABLE—BILL OF EXCEPTIONS.

Complaint cannot be made of argument of counsel that testimony of a certain witness should not be believed on the ground that the opposing party had not produced other witnesses when in fact such party had offered to account for the absence of other witnesses, where the bill of exceptions does not show what the absent witnesses would testify to.

6. TRIAL ☞141—QUESTION FOR JURY—ADMITTED FACTS.

Where defendant insurance company admitted that plaintiff had good cause of action except so far as it might be defeated by facts to be established on the trial, it was not error to refuse defendant's request to submit to the jury whether or not attorney's fees sued for were reasonable; no evidence having been introduced upon that question.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Mrs. Mary R. H. King against the Ætna Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Wm. J. Moroney, of Dallas, and W. S. Berkshire and Jackson & Isaacks, all of El Paso, for appellant.

J. F. Woodson, O. R. Armstrong, and Lea, McGrady & Thomason, all of El Paso, for appellee.

HARPER, C. J. This is a suit by appellee, Mary R. H. King, widow of Silas L. King, to recover of appellant, Ætna Life Insurance Company, on two life insurance policies for $25,000 each, or $50,000, interest at 12 per cent., statutory damages, and $12,000 attorney's fees. The cause was submitted to a jury upon special issues, and upon the answers thereto judgment was entered for the full amount sued for.

The defenses are that:

(a) The policies were procured with suicidal intent; (b) actual suicide within one year from the issuance of the policies; (c) that he falsely represented that his brother died of alcoholism, while he was in fact a suicide; (d) that he misrepresented the facts as to his own use of alcohol; (e) and that after deceased had applied for the policies in appellant company, and before delivered, he made application to the Kansas City Life for a policy and failed to notify appellant of that fact.

The jury found:

(1) That Silas L. King did not commit suicide.
(2) That he did not take out the policy in contemplation of suicide.
(3) That the fact that Terry King, the brother of Silas King, committed suicide, instead of dying from alcoholism, was not material to the risk.
(4) That Silas King believed in good faith that Terry King died of alcoholism.
(5) That Silas King had never been intemperate in the use of malt or spirituous liquors.
(6) "Q. Do you find from a preponderance of the evidence that the fact, if it was a fact, that Silas L. King had been intemperate in the use of either malt or spirituous liquors, was material to the risk assumed in said policies issued by defendant on his life? Answer: No."
(7) "Q. Do you find from the preponderance of the evidence that if deceased had communicated to the defendant that subsequent to the admission of the written application for policy, and prior to the delivery of the two policies in question in this suit to him, that he had made application on the 25th day of August, 1916, to the Kansas City Life Insurance Company, for a policy in the sum of $25,000.00 on his life, it would not have delivered to him the two policies in question in this case? Answer: No."

Special issue No. 1 asked by plaintiff:

"Do you believe from the evidence that when Silas King signed the second application to defendant called 'short form of application' dated August 31, 1916, he thereby intended to rep-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error denied by Supreme Court March 26, 1919.

resent to defendant that he had not applied to the Kansas City Life Insurance Company for a policy of insurance? Answer: No."

## Statement of the Case.

Silas L. King, after having been frequently solicited to do so for more than a year, on July 30, 1916, made application to the Ætna Life Insurance Company for a life policy of $25,-000. When this application was sent in by McKnight, general soliciting agent for the company at El Paso, Tex., as the latter expressed it, "I thought it possible to deliver him more insurance and so wrote the company." As a result, the company sent in two policies of $25,000 each, and a short form application accompanied the second policy, to be filled out, with additional medical examination, after which both policies were delivered. Notes were taken for the first annual premiums. The company received its money, and the notes have been paid. The first or long form of application contained the following questions and answers:

Q. Have you ever been intemperate in the use of either malt or spirituous liquors? Answer: No.

Q. Do you use either malt or spirituous liquors daily or nearly every day? Answer: No.

Q. (a) If used at all, what kind; (b) how often, and what quantity? Answer: Do not use any of any kind.

### Family Record.

| | Living. | | Dead. | | |
|---|---|---|---|---|---|
| | Age. | Health. | Age. | Cause of Death. | Date of Death. |
| Father | | | 80 | Old Age | 1914 |
| Father's Father | | | DK | DK | DK |
| Father's Mother | | | DK | DK | DK |
| Mother | | | 64 | DK | 1900 |
| Mother's Father | | | DK | DK | DK |
| Mother's Mother | | | DK | DK | DK |
| Brothers—4 | 58 | Good | 50 | Alcoholism | 1912 |
| | 40 | Good | | | |
| | 37 | Good | | | |
| Sisters—3 | 50 | Good | | | |
| | 52 | Good | | | |
| | 48 | Good | | | |

It was agreed that the letters "DK" in the application meant, "Don't Know." It also contained the question and answer:

(g) "What amount of insurance is now in force on your life, and in what company or association? Answer: $2,500.00 National Life."

The short form application upon which the second policy for $25,000 was issued, as applicable to this opinion, reads:

"I hereby apply to the Ætna Life Insurance Company for a contract of insurance upon my life, and I declare that I am in sound health, and now repeat all the declarations, statements and answers signed by me in an application to said company dated July 28, 1916, on which contract No. 161373 was issued, and make them a part of this application, with the exception of such answers as are given below, and I hereby agree that the declarations, statements and answers repeated as above, together with those given below, are complete and true and that they shall form a part of the contract or policy to be issued by said company upon my life."

In the "answers given below" in said second or short form of application, there were no answers that modified in any way the statements and representations made in said original application, dated July 28, 1916, heretofore quoted.

Attached to and made a part of each policy was a copy of said original application, and in addition a copy of said second application, which was dated August 28, 1916, was attached to and made a part of said policy 161374. The short form application was signed September 1, 1916. On August 25, 1916, King had made an application to the Kansas City Life Insurance Company for $25,000 insurance, which was subsequently issued; the short form application did not mention this fact.

[1, 2] The failure of King to reveal that the Kansas City Life Policy had been applied for since the original application was made could not be held to be a misrepresentation of fact, nor was it a failure to answer any question in either the short or long form of application. Appellant contends that question No. 8 in the first application required the insured to reveal, by his answers to the questions in the second or short form application, that he had applied for this policy. The question reads:

"Has any proposal or application ever been made or submitted to any company, association, agent or physician for which insurance on your life is now pending, or has not been granted for the full amount, and of the same kind as applied for? If so, state particulars, and the names of all such companies, etc. Answer: No."

But as we view the facts, the appellant's policies were "ordinary life, commercial nonparticipating policies," annual premium ($798.50). The Kansas City policy was ordinary life (not commercial) premium $807.50, so "not of the same kind as applied for." At least, the question was of doubtful meaning at the time the short form application was signed, and this is so in another respect. The short form was presented to King, filled out as signed, and is susceptible of the meaning that the declarations in the original application were true when made. The question being of doubtful or obscure meaning, it will be construed in favor of enforcement of the policy. Mutual Life Insurance Co. v. Ford, 61 Tex. Civ. App. 412, 130 S. W. 769. The testimony of the representatives of the company clearly indicates that, under all the facts, these policies would have been issued had they known that the application for the Kansas City Life policy had been made. At least, it does not so affirmatively appear therefrom that it probably would not have

been issued had they possessed the knowledge as to justify the court (if it is a question for the court) in holding that the failure of Silas L. King to make a true answer was material.

The fourth assignment raises two questions: That the finding of the jury that Silas L. King did not take out the policies in contemplation of suicide, and the finding that he did not commit suicide, are contrary to the overwhelming weight and preponderance of the evidence.

There is abundance of evidence to sustain the jury's findings as to both propositions. It could serve no good purpose to quote it, so the assignment is overruled.

The first and third urge that the statements in the application for insurance that Terry King, a brother to insured, died of "alcoholism," when in fact he suicided, and the statement that he (Silas King) did not use alcoholic or malt liquors of any kind, when in fact he was addicted to their use to some extent, were material representations as a matter of law; therefore void the policies.

That the facts indisputably establish the materiality of the misrepresentations, therefore the question should have been determined by the court and should not have been submitted to the jury.

[3] A misrepresentation in the application for policy is declared by the courts to be material when knowledge of the truth, by the company, might reasonably have caused the company to refuse to issue the policy. Article 4947, Vernon's Sayles' Statutes of Texas, reads:

"Any provision in any contract or policy of insurance issued or contracted for in this state, which provides that the answers or statements made in the application for such contract, or in the contract of insurance, if untrue or false, shall render the contract * * * void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

[4] If the great preponderance and weight of the evidence, as contended by appellant, was to the effect that the representations were not made in good faith and that they were in fact material in that the company would not likely have issued the policies, if the answers had conveyed the exact truth to it, then it must be conceded that the questions should not have been submitted to the jury; but such a proposition is not supported by the record. The answer as to the cause of the death of his brother was made under the form for "Family History" as above indicated. There is no evidence in the record that tends to indicate that the deceased's "family history" as to the cause of the death was otherwise than as declared by the answer. Upon the other hand, the only positive testimony is that the answer was true as to family history, that he had been told that alcoholism was the cause of the death, and there is no evidence that he had ever been otherwise informed, but, to the contrary, his acts and statements showed that he in fact believed his statement to be true. It is in evidence that he admonished his boys to avoid the use of alcohol, and cited their Uncle Terry's death as an example of the evil consequences of the excessive use of it. In fact, the record does not disclose the manner in which Terry King suicided. It may have been by the excessive use of alcohol. However, it seems a logical conclusion to indulge that the information to the company that his brother suicided by some means would not have been considered more seriously in determining upon the issuance of the policies than the fact that he caused his own death by the excessive use of alcoholic liquors, because they are not materially different.

That the answer of Silas King that he himself did not use alcoholic or malt liquors of any kind, when in fact, if it was a fact, he did to a certain extent so use it, influenced the company to issue the policy when if it had been correctly informed it would not have done so, seems conclusively refuted by the fact that the company had a report from the Retail Credit Company that Silas King did take an occasional drink, and, notwithstanding this report nearly two months prior to King's death, it did not cancel the policies. In fact, there is no evidence in this record that he indulged in alcoholic drinks at all at the time he signed the application. So if the credit company did in fact find that he took an occasional drink after the application was signed, this fact would not be proof that his answer was untrue at the time made, so clearly these were questions properly submitted to the jury. Blackstone v. Kansas City Life Insurance Co., 107 Tex. 102, 174 S. W. 821; Guarantee Life Insurance Co. v. Evert, 178 S. W. 643.

The second assignment consists of a verbatim copy of four separate paragraphs of the motion for a new trial, and each paragraph raises a distinct question. They are not propositions within themselves, so, as an assignment of error, are multifarious and should not be considered; but we have concluded to pass upon the two propositions which follow, because they are in a sense akin to the points discussed next above. The propositions are:

1. "A verdict contrary to the positive, uncontradicted, and unimpeached testimony of a single witness should be set aside, and on appeal it should be disregarded." It is asserted that the testimony of witness Bailey is to the effect that Silas King had been intemperate in the use of spirituous and malt liquors; hence his answer, "No," to the ques-

tion, "Have you ever been intemperate in the use of either malt or spirituous liquors?" was untrue. The testimony of the witness will not bear out the charge in this assignment. He said that he had known King from 1914 to his death; had seen him take a drink which he made himself called wine and whisky; that he thought it had alcohol in it, but that he had never seen him intoxicated that he could tell, neither does the record bear out the charge that the testimony is uncontradicted. Mrs. King testified:

"My husband did not use intoxicants in any form since our marriage. I never knew of him using intoxicants in any form."

Appellant introduced in evidence the report of Jordan Reporting Company, which shows that he was not a user of intoxicants; also, the report of Retail Credit Company, which showed that King took an occasional .drink with a friend, etc. So the truth or falsity of this answer was a question for the jury as well as its materiality.

[5] In this connection, in the same assignment, appellant complains of the argument of one of the counsel for appellee that the testimony of witness Bailey should not be believed, on the ground that the defendant had not produced other witnesses to the same effect, when in fact defendant had offered to account for the absence of other witnesses. This was not error, because the bill of exceptions does not show what the witnesses whose absence it offered to account for would testify to.

The fifth assignment, charging error in excluding the testimony of various witnesses concerning several different and distinct matters of fact, is overruled because without merit.

[6] The sixth is that the court erred:

"(a) In denying the appellant's request to open and conclude the evidence and argument without making the statutory admissions; (b) in refusing a special issue as to attorney's fees; (c) in rendering judgment as to any attorney's fees; (d) and because $12,000.00 attorney's fees is excessive."

The record shows that defendant filed its motion to be permitted to open and close the case because under the pleadings the burden of proof of the whole case was upon the defendant, without making the statutory admissions. When this request was refused by the court, it made the admission that plaintiff had a good cause of action except so far as it may be defeated, in whole or in part, by the facts which may be established on the trial. It was then permitted to open and conclude in introducing evidence and argument; this admission having been made, and the jury having found appellant liable upon the policies after hearing its evidence. There having been no evidence introduced upon the question of recovery of attorney's fees, nor as to whether the $12,000 sued for was a reasonable attorney fee, it was not error to refuse to submit these questions to the jury, for, until appellant had made some showing by its evidence which would tend to defeat plaintiff's cause of action in this respect, it stood before the court confessing judgment for the amount sued for.

Finding no error in the record, the case is affirmed.

On Rehearing.

By the motion for rehearing, our attention is called to the fact that we quoted a portion of article 4947, Revised Statutes of Texas, as applicable to the questions under discussion. We think it clearly appears that the observations had for their basis the provisions of articles 4741, 4959, Rev. St., passed in 1909:

"No policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, unless the same shall contain provisions substantially as follows: * * * (4) A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

"No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed."

We therefore withdraw that portion of the opinion and substitute the above in its stead.

For a full discussion of the applicability of the two statutes to the points at issue in this case, we refer to Guaranty Life Insurance Co. v. Evert, 178 S. W. 643.

With this correction, the motion is overruled.

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error denied by Supreme Court March 26, 1919.